IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALICIA B. JACKSON,

        Plaintiff,               No. CIV S-09-1387 FCD DAD PS

    v.

BOARD OF EQUALIZATION,

        Defendant.      <u>ORDER</u>

_____/

       This matter came before the court on December 4, 2009, for hearing of defendant's motion to dismiss, motion to strike, and motion for more definite statement. Attorney Kristin M. Daily appeared for the moving party. Plaintiff, proceeding pro se, appeared on her own behalf. Oral argument was heard, and the motions were taken under submission.

       For the reasons set forth below, upon consideration of the briefing on file, the parties' arguments at the hearing, and the entire file, the court will grant defendant's motion to dismiss. However, in light of plaintiff's pro se status and for the reasons set forth below, the court will also grant plaintiff a final opportunity to amend her complaint to attempt to allege a cognizable claim.

/////

/////

1

PLAINTIFF'S CLAIMS[1]

Plaintiff initiated this action by filing her complaint on May 19, 2009.  On September 8, 2009, defendant moved to dismiss that complaint.  Plaintiff did not file written opposition to that motion but instead, on October 8, 2009, filed a motion seeking leave of court to file an amended complaint.  The court granted both defendant's motion to dismiss and plaintiff's motion for leave to file an amended complaint.  On October 9, 2009, plaintiff filed her first amended complaint which is now the operative pleading in this action.

In her first amended complaint, plaintiff alleges as follows.  On or about November 22, 2006, defendant California Board of Equalizations ("BOE") asked for employees to volunteer to participate in a yearly holiday committee.[2]  (First Amended Complaint (FAC) at 4 of 27.)  Plaintiff signed up to be a committee vice chair and was the only African American holiday committee member.  (Id.)  In order to raise money for the holiday food drive, plaintiff sought permission to purchase items for a raffle.  (Id.)  The committee chairperson agreed to reimburse plaintiff and plaintiff purchased items for the raffle.  (Id.)  Sometime thereafter plaintiff noticed that dates for the raffle were changed to days when employees were not at work, that incorrect or misleading information was being disseminated about the raffle, and that supplies were not being made readily available.  (Id. at 5.)  On December 6, 2006, plaintiff was informed that she would not be reimbursed for her purchases.  (Id.)

/////

/////

/////

---

[1]  Deciphering plaintiff's claims is made somewhat difficult by the fact that in her first amended complaint she has provided a chronological listing of events, the importance of some of which is not explained, without relating factual allegations to her specific claims.

[2]  For every date identified by plaintiff in her first amended complaint she alleges that the events alleged occurred "on or about" the given date.  The court will omit that qualifying phrase from the summary of plaintiff's factual allegations.

On December 8, 2006, plaintiff was approached by "CAC board members/ coworkers (sic)" who demanded to speak with her immediately.[3]  (Id.)  Plaintiff was on the phone with a client and requested that the two co-workers leave her work cubicle.  (Id.)  The two co-workers did not leave, began yelling at plaintiff, and displayed an "aggressive manner" and "aggressive body language."  (Id.)  They informed plaintiff that "using the food drive for the (sic) personal gain is against the law and [that] they will be contacting ISAD to prosecute her."[4]  (Id.)  The two coworkers also threatened to inform plaintiff's supervisor about her conduct.  (Id.)  Plaintiff repeated her request that the two leave her cubicle.  The two co-workers finally left when plaintiff stood and repeated her request a third time.  (Id.)

On December 11, 2006, plaintiff was informed that she would have to fill out a discrimination complaint as a result of the incident with her two co-workers, instead of a department grievance form, and that she should give the completed discrimination complaint to her immediate supervisor, Kenneth Lawson.  (Id. at 6.)  Plaintiff did so and was told that she would receive a decision in response to the complaint within ten working days.  (Id.)  That same day plaintiff was informed by her union representative that she would not be represented by the union with regard to the December 8, 2006 incident involving her two co-workers.  (Id. at 7.)

On December 12, 2006, plaintiff completed a BOE absence request form so that she could leave work early to meet with an attorney regarding her discrimination compliant.  Plaintiff was told the following by the employee responsible for signing off on such requests:[5]

> You do want to move up the career ladder here, right?  I know you have been talking about what classes you need to take to become a Business Tax Representative, well I would not go through with this

---

[3]  Plaintiff does not explain in her first amended complaint the meaning or importance of the identification of her co-workers as "CAC board members."

[4]  It appears from plaintiff's opposition to defendant's pending motion to dismiss that the "ISAD" is the "Internal Security Audit."

[5]  Plaintiff identifies this employee in her opposition to defendant's motion to dismiss as a "hiring supervisor."

1                    discrimination complaint because if you do no one will hire you,
you will be labeled a troublemaker.  You know how people talk

2                    here; you do want to move up don't you.

3  (Id. at 7-8.)  On December 13, 2006, plaintiff was reimbursed for all purchases she made in

4  connection with the holiday raffle by administrator Dan Tokutomi.  (Id. at 8.)

5               On January 2, 2007, plaintiff sent an e-mail inquiring about the status of her

6  discrimination complaint to Dan Tokutomi, Richard Parrot, and Kenneth Lawson.  (Id.)  On

7  January 3, 2007, she was told by Parrot that Tokutomi would answer her inquiry.  (Id.)  On

8  January 11, 2007, plaintiff's wages were garnished "because BOE was sending the money that

9  was coming out of her paycheck and sending it to pay another employees date (sic) with the

10  Franchise Tax Board."  (Id.)

11             On January 17, 2007, plaintiff again e-mailed Parrot, Tokutomi and Lawson

12  inquiring about the status of her discrimination complaint but received no immediate response.

13  (Id. at 9.)   On January 22, 2007, she was informed that Lynn Bartolo would eventually have an

14  answer to her complaint.  (Id.)  On March 12, 2007, plaintiff still had not received an answer to

15  her compliant and contacted the Equal Employment Opportunity Commission ("EEOC").  (Id.)

16  On May 5, 2007, plaintiff received a corrected W-2 form.  (Id. at 10.)  On June 6, 2007, plaintiff

17  received a second corrected W-2 form.[6]  (Id.)

18             In July of 2007 plaintiff was interviewed for a position as an Office Technician

19  but was not hired.  (Id.)  The person hired for the position was the sister of another employee and

20  had no previous experience in the Excise Tax Division.  (Id. at 10-11.)

21             Sometime in August 2007 plaintiff was informed that she could not reschedule a

22  test for a Tax Technician II position, even though she was returning from a funeral in Texas.  (Id.

23  at 10.)  In September of 2007 plaintiff was notified by the Franchise Tax Board that "they were

24  going to reissue the garnishment order because BOE still had failed to provide them with

25

26       [6]  Plaintiff does not explain in her first amended complaint the genesis of these "corrected
W-2" or their significance to her other allegations.

evidence to show" that plaintiff had been making the required monthly payments to the Franchise Tax Board.  (Id.)

That same month plaintiff spoke to Richard Parrot about another open position as an Office Technician and was told that she would be interviewed for the position.  (Id.) Plaintiff, however, was not interviewed and the person hired for the position was a Caucasian woman with no previous work experience in the Excise Tax Division.  (Id.)

In October 2007 plaintiff was informed that, because she "still owed money to the State Controller's Office," she would not be receiving her paycheck on time.  (Id. at 11.) Plaintiff alleges that the BOE informs the State Controller's Office of who owes money.  (Id.) According to plaintiff, the claim that she owed "money to the state [was] unfounded" and she did not receive her paycheck until "well after payday."  (Id.)  Sometime in November 2007 plaintiff left the BOE for a position with the California Department of Corrections.  (Id.)  In July of 2008, plaintiff received a check from the BOE for her wrongfully withheld wages in the amount of $644.  (Id.)  Plaintiff later filed a complaint with the EEOC.

On February 20, 2009, plaintiff was issued a right to sue letter by the EEOC in connection with the complaint she had filed against the BOE with that agency.  (Id., Ex. A.)  As noted above, on May 19, 2009, plaintiff commenced this action by filing a complaint alleging racial discrimination and naming the BOE as the sole defendant.  On October 9, 2009, plaintiff filed this first amended complaint alleging racial discrimination and retaliation.  Specifically, plaintiff alleges that the defendant's conduct violated the Fourteenth Amendment, Title VII of the Civil Rights Act, and the defendant's own administrative manual and ethics policy.  On October 29, 2009, defendant filed a motion to dismiss.  Plaintiff filed an opposition on November 13, 2009.  Defendant filed a reply on November 24, 2009.

/////

/////

/////

5

1     DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

2          Defendant seeks dismissal with prejudice of plaintiff's first amended complaint.[7]

3 In this regard, defendant argues that a cause of action pursuant to the Fourteenth Amendment

4 based on a violation of 42 U.S.C. § 1983 cannot be brought against a state agency.  Defendant

5 further argues that plaintiff has failed to state a cause of action for discrimination or retaliation

6 under Title VII.  Defendant also argues that this court lacks jurisdiction over any state law claims

7 raised by plaintiff.

8                   LEGAL STANDARDS

9 I.  Federal Rule of Civil Procedure 12(b)(6)

10        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

11 sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

12 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

13 sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

14 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

15 relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Thus,

16 a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the

17 plaintiff's claims, even if the plaintiff's allegations are true.

18        In determining whether a complaint states a claim on which relief may be granted,

19 the court accepts as true the allegations in the complaint and construes the allegations in the light

20 most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

21 United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

22 stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

23 520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

24

25      [7] Defendant has also moved to strike plaintiff's claim for declaratory and injunctive relief and for a more definite statement.  In light of the recommended disposition of the pending

26 motion to dismiss, the court will not address those aspects of defendant's motion.

1  form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The

2  court is permitted to consider material which is properly submitted as part of the complaint,

3  documents that are not physically attached to the complaint if their authenticity is not contested

4  and the plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City

5  of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

6  II.  Application of Standards[8]

7       A.  42 U.S.C. § 1983

8            Defendant asserts that any claims brought pursuant to 42 U.S.C. § 1983 for a

9  violation of plaintiff's Fourteenth Amendment rights must be dismissed on the basis of sovereign

10  immunity.  Defendant Board of Equalization, a state agency, claims that sovereign immunity bars

11  suits against a state by its own citizens.  Defendant argues in this regard that a suit against a state

12  agency is considered to be a suit against the state.  Plaintiff counters by arguing that sovereign

13  immunity is inapplicable if the state agency being sued has accepted federal funding, that the

14  BOE has accepted federal funding and thus sovereign immunity does not apply here.

15            The Eleventh Amendment provides that "[t]he Judicial power of the United States

16  shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

17  one of the United States by Citizens of Another State."  The Amendment bars suits against a state

18  or its agencies, regardless of the relief sought, and even where jurisdiction is predicated on a

19  federal question, absent the state's affirmative and unequivocal waiver of its immunity or

20  congressional abrogation of that immunity.  Pennhurst State Sch. & Hosp. v. Halderman, 465

21  U.S. 89, 97-99 (1984); Brown v. California Dept. of Corrections, 554 F.3d 747, 752 (9th Cir.

22  2009); Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th Cir.

23  1999).  Eleventh Amendment immunity extends to governmental entities that are "arms of the

24  _____

25       [8] As previously noted, deciphering the precise claims advanced by plaintiff is made
somewhat difficult by the fact that plaintiff does not relate particular facts alleged in her
26  complaint to the specific violations of law she is alleging.

1   state." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70 (1989).  The Eleventh

2   Amendment also bars federal suits, whether seeking damages or injunctive relief, against state

3   officials where the state is the real party in interest.  <u>Pennhurst</u>, 465 U.S. at 101-02; <u>Krainski v.</u>

4   <u>Nevada ex rel. Board of Regents</u>, ___F.3d___, ___, 2010 WL 2991397, at *2 (9th Cir. Aug. 2,

5   2010) ("The Eleventh Amendment jurisdictional bar applies regardless of the nature of the relief

6   sought and extends to state instrumentalities and agencies.").

7          To be a valid waiver of sovereign immunity, a state's consent to suit must be

8   "unequivocally expressed in the statutory text." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  <u>See</u>

9   <u>also</u> <u>Pennhurst</u>, 465 U.S. at 99; <u>Yakama Indian Nation</u>, 176 F.3d at 1245.  "[T]here can be no

10  consent by implication or by use of ambiguous language." <u>United States v. N.Y. Rayon</u>

11  <u>Importing Co.</u>, 329 U.S. 654, 659 (1947).  Courts must "indulge every reasonable presumption

12  against waiver," <u>Coll. Sav. Bank v. Florida Prepaid</u>, 527 U.S. 666, 682 (1999), and waivers

13  "must be construed strictly in favor of the sovereign and not enlarged beyond what the [statutory]

14  language requires." <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 34 (1992) (citations,

15  ellipses, and internal quotation marks omitted).  "To sustain a claim that the Government is liable

16  for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously

17  to such monetary claims." <u>Lane</u>, 518 U.S. at 192.  Finally, the Ninth Circuit has recognized that

18  "[t]he State of California has not waived its Eleventh Amendment immunity with respect to

19  claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was

20  not intended to abrogate a State's Eleventh Amendment immunity." <u>Brown v. California Dept.</u>

21  <u>of Corrections</u>, 554 F.3d at 752 (quoting <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir.

22  1999)).

23         Here, plaintiff's claim is brought under § 1983 in a federal court against the

24  California Board of Equalization.  That agency is an arm of the State of California.  Plaintiff's

25  claims pursuant to 42 U.S.C. § 1983 against the BOE are therefore barred by sovereign immunity

26  and should be dismissed.

1    B.  <u>Title VII</u>

2         Title VII makes it unlawful for an employer to "discriminate against any

3    individual with respect to [her] compensation, term, conditions, or privileges of employment,

4    because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  A person is discriminated

5    against when he or she is singled out and treated lass favorably than others similarly situated on

6    account of race.  <u>Jauregui v. City of Glendale</u>, 852 F.2d 1128, 1134 (9th Cir. 1988).

7         1)  <u>Discrimination</u>

8         It is well-settled that Title VII is concerned not only with intentional

9    discrimination, but also with employment practices and policies that lead to disparities in the

10   treatment of classes of workers.  <u>See</u>, <u>e.g.</u>, <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 430-31

11   (1971).  Thus, a plaintiff alleging discrimination under Title VII may proceed under two theories:

12   disparate treatment or disparate impact.  <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986-

13   87 (1988).  While the disparate treatment theory requires proof of discriminatory intent, intent is

14   irrelevant to a disparate impact claim.  <u>Id</u>. at 988.  "[I]mpact analysis is designed to implement

15   Congressional concern with 'the consequences of employment practices, not simply the

16   motivation.'"  <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1424 (9th Cir. 1990) (citations

17   omitted).  A *prima facie* case of disparate impact is typically achieved by statistical evidence

18   demonstrating the selection bias of an employment practice.  <u>Stout v. Potter</u>, 276 F.3d 1118,

19   1122 (9th Cir. 2002.)  Here, plaintiff has failed to allege any facts that would suggest a disparate

20   impact claim.  Accordingly, the court will assess whether plaintiff's first amended complaint

21   alleges a cognizable discrimination claim based on disparate treatment.

22         A plaintiff in a disparate treatment case bears the burden of alleging and proving

23   that the defendant employer intentionally discriminated against her.  <u>Texas Dep't of Community</u>

24   <u>Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>McGinest v. GTE Service Corp.</u>, 360 F.3d 1103,

25   1122 (9th Cir. 2004).  A plaintiff must, therefore, allege and prove discriminatory motive on the

26   part of the defendant.  <u>International Brotherhood of Teamsters v. United States</u>, 431 U.S. 324,

9

335 n.15 (1977).  A plaintiff may prove intent through either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007).  An example of direct evidence of such intent is an employer's use of a racial slur or epithet.  Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1141 (9th Cir. 2006); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006).  Here, plaintiff has failed to allege any facts that would even suggest the existence of direct evidence of discriminatory intent on the part of defendant.

Alternatively, a plaintiff may rely on the familiar McDonnell Douglas burden shifting framework to prove discriminatory intent.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008). Under the McDonnell-Douglas test for assessing Title VII discrimination claims, the plaintiff can establish a *prima facie* case by showing:

> (i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp., 411 U.S. at 802.  See also Noyes v. Kelly Services, 488 F.3d 1163, 1168 (9th Cir. 2007).

Once plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802-803; Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).  If defendant meets its burden in that regard, the burden shifts back to plaintiff to establish that defendant's proffered reason was a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Diaz, 521 F.3d at 1207.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  St. Mary's Honor Ctr. v. Hicks, at 507 (quoting

1   Burdine, 450 U.S. at 253).

2          Plaintiff alleges in her first amended complaint that in September of 2007 she

3   indicated her interest in an Office Technician position with BOE and was told by superiors that

4   she would be interviewed for the open position.  Plaintiff alleges, however, that she was not

5   interviewed and that instead a Caucasian woman "whom had no previous work experience in

6   [the] Excise Tax Division" was hired.[9]  (FAC at 10.)

7          Defendant does not dispute plaintiff's allegations that she belongs to a racial

8   minority and that she expressed her interest in the Office Technician position that others were

9   selected to fill, nor could they dispute such allegations by way of their motion to dismiss.

10   Defendant does, however, argue that plaintiff has failed to allege that she was qualified for the

11   position of Office Technician or that the position represented a promotion for her.  In this regard,

12   defendant argues that, "[g]iven the ambiguity in plaintiff's allegation, it fails to state an adverse

13   employment action under Title VII, and the motion to dismiss should be granted."  (MTD at 11-

14   12 of 15.)

15          It is true that in her first amended complaint, plaintiff alleges only that the

16   Caucasian woman hired "had no previous work experience in the Excise Tax Division."  (FAC at

17   10.)  While plaintiff's first amended complaint does not allege that she was not hired for the

18   position despite her qualifications or that she was as qualified or more qualified than the

19   candidate eventually hired by BOE, in her opposition to defendant's motion plaintiff does asserts

20   that she was "more than qualified to take the job as [an] Office Technician" and that she was

21   /////

22   /////

23

24          [9]  Plaintiff also alleges that she interviewed for a similar position in July 2007, but that
the sister of a co-worker was hired for that opening.  (FAC at 10-11.)  Plaintiff alleges that in that
25   instance the individual hired for the position had no previous experience in the "Excise Tax
Division" but plaintiff does not allege that the individual hired was of a different race than her.
26   (Id. at 11.)

1   more qualified than the Caucasian woman who was ultimately hired.[10]  (Opp'n at 11-12 of 27.)

2   Plaintiff also now argues in opposing dismissal that she had previous experience working for the

3   State of California and, in particular, the Excise Tax Division, and was familiar with the

4   workings of the office which was "very important to do [that] particular position."  (Id.)

5          While supportive of her discrimination claim, plaintiff did not allege these facts in

6   her first amended complaint but instead raised them for the first time in her opposition to

7   defendant's motion to dismiss.  Based on the allegations of her first amended complaint, plaintiff

8   has failed to allege the necessary elements of a prima facie case of discrimination evidenced by

9   disparate treatment based on defendant's September 2007 hiring decisions.

10         As to the other facts alleged in plaintiff's first amended complaint, the same

11  McDonnell Douglas elements discussed above apply.  Thus, plaintiff must allege facts showing

12  that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was

13  subject to an adverse employment action; and (4) similarly situated individuals outside her

14  protected class were treated more favorably.  Chuang v. University of California Davis, Bd. of

15  Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).  Reviewing those allegations, the court finds them

16  insufficient to state a cognizable claim that plaintiff suffered any adverse employment action or

17  that individuals outside her protected class were treated more favorably than she.  The allegations

18  of plaintiff's first amended complaint, even if true, would fail to establish a discriminatory intent

19  on the part of the BOE.

20         In this regard, plaintiff merely alleges that "the BOE asked for volunteers" for the

21  holiday committee upon which she served.  (FAC 4 at 27. ) There is no allegation, however, that

22  the BOE had any further role in the activities of that volunteer employee holiday committee.

23  Plaintiff has also not alleged that the BOE had any involvement in the delay of her

24  reimbursement for the items purchased in furtherance of the committee's activities or in the

25

26         [10] Plaintiff also claims in her opposition to the motion to dismiss that she was more
    qualified than the applicant who was hired to fill the office technician job opening in July 2007.

1   confrontation between plaintiff and her two co-workers over her conduct in connection with that

2   volunteer committee.

3          In her opposition to the BOE's motion to dismiss, plaintiff argues that the BOE

4   discriminated against her by barring "plaintiff from using the assistance of a union

5   representative." (Opp'n at 9 of 27.)  In her first amended complaint, however, plaintiff did not

6   allege such facts but rather merely alleged that a union representative informed her that he would

7   not be able to assist her with respect to her dispute with her two co-workers.  (FAC at 7 of 27.)

8   Even if true, such an allegation would not support a claim of an adverse employment action

9   against plaintiff by defendant BOE.  Nor has plaintiff alleged that individuals outside her

10   protected class were treated more favorably than she was in this regard.[11]

11          Plaintiff also alleges in her first amended complaint that a co-worker tried to

12   dissuade her from meeting with an attorney to discuss her discrimination complaint by cautioning

13   that pursuing her complaint would result in plaintiff being "labeled a troublemaker" and that "no

14   one will hire you." (FAC at 7 of 27.)  While one employee attempting to dissuade another

15   employee from exercising her legal rights may be ill advised, this allegation standing by itself

16   does not support a claim that plaintiff was subject to an adverse employment action.[12]  See

17

18          [11] While not commenting on the veracity of this allegation, it would seem plausible that a
     union representative would be unable to assist an employee in such a dispute since the union's
19   role is to represent all employees in disputes between employees and their employer.

20          [12] However, in her opposition to the motion to dismiss, plaintiff identifies the co-worker
     who allegedly dissuaded her from pursuing her discrimination complaint as a BOE "hiring
21   manager" who had been with the agency for more than ten year. (Opp'n at 7 of 27.)  In addition,
     plaintiff characterized the hiring manager's comments as a threat that she would suffer adverse
22   consequences if she pursued her discrimination complaint. (Id.)  Once again, plaintiff did not
     allege these facts in her first amended complaint.  If she were to allege such facts, they may well
23   be sufficient to state a cognizable claim that she suffered an adverse employment action.  Such
     words coming from a hiring supervisor combined by the allegation that thereafter plaintiff was
24   denied an interview for a position for which she was qualified, would present a much different
     claim than an allegation of idle chatter between co-workers. See Brooks, 229 F.3d at 927 n.9 (a
25   different question arises if remarks came from a supervisor rather from a co-worker, since the
     employer cloaks supervisors with authority and their conduct is therefore ordinarily attributed to
26   the employer).

Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000) (badmouthing an employee outside the job reference context does not constitute an adverse employment action); Ray v. Henderson, 217 F.3d 1234, 1240  (9th Cir. 2000) (definition of an adverse employment action "does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity.")  Nor has plaintiff alleged that individuals outside her protected class were treated more favorably in this regard.

Plaintiff also alleges that after she filed her discrimination complaint she repeatedly contacted BOE employees inquiring about the status of her complaint but felt that she was being given the "run around."  (FAC at 9 of 27.)  Plaintiff claims that the delay in resolving her complaint violated the BOE's "Discrimination Complaint Process Policy."  (Id.) Nevertheless, while the delay in resolving her complaint that plaintiff experienced may have been in violation of the defendant's own policy, that delay in and of itself does not constitute an adverse employment action since it was not reasonably likely to deter employees from engaging in protected activity.  See Coszalter v. City of Salem, 320 F.3d 968, 970-76 (9th Cir. 2003). Moreover, once again plaintiff has not alleged in her first amended complaint that individuals outside her protected class were treated more favorably in this regard.

Plaintiff also complains about "corrected W-2" forms, confusion concerning a wage garnishment order from the Franchise Tax Board, and a delayed paycheck.[13]  While the precise import of these allegations is unclear from plaintiff's first amended compliant, plaintiff does state that she was eventually compensated by the BOE for money wrongfully withheld from her paycheck.  In her opposition to the pending motion plaintiff also states that the "only reason . . . wages were not garnished was because [plaintiff] was proactive about inquiring about her tax

---

[13]   In her opposition to defendant's motion to dismiss plaintiff states the delayed pay check was the result of "an order from the personnel office" stating that plaintiff owed money to the State Controller's Office and that the receipt of her paycheck was delayed "five calendar days." (Opp'n at 17 of 27.)

1  bill with the Franchise Tax Board."  (Opp'n at 13 of 27.)  Plaintiff evidently discovered that the

2  wages being properly garnished from her paycheck were mistakenly being credited to another

3  employee's garnishment order.[14]  That error was apparently corrected.  Regardless, plaintiff has

4  alleged nothing more than clerical errors in this regard.  Allegations of such errors do not, in and

5  of themselves, constitute an adverse employment action.

6          Plaintiff also alleges that the BOE refused her request to reschedule a test for a

7  Tax Technician II position after plaintiff returned from a funeral held out of state.  Plaintiff

8  asserts that she was told that her need to attend a funeral did not provide a reasonable

9  justification to reschedule the test.  Again, even if plaintiff's allegation in this regard are true, the

10  mere denial of a request to reschedule a test is not an adverse employment action and plaintiff

11  has not alleged that individuals outside her protected class were treated more favorably with

12  respect to such requests.

13          Plaintiff's allegations regarding these matters, at worst, reflect that the BOE was

14  an imperfect, inflexible employer that inconvenienced plaintiff with multiple clerical mistakes.

15  While perhaps irritating, even if true, plaintiff's allegations do not allude to an adverse

16  employment action that materially affected the terms and conditions of her employment.  See

17  Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1126 (9th Cir. 2000)

18  (For a Title VII discrimination claim, an adverse action is one that "materially affect[s] the

19  compensation, terms, conditions, or privileges of the [plaintiff's] employment.").  For instance,

20  plaintiff's allegations do not suggest serious job actions, such as the initiating of an investigation

21  against an employee or the transfer of job duties, that have been found to constitute adverse

22  employment actions.  See Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007).  Finally, in

23  each instance plaintiff has not alleged in her first amended complaint that individuals outside her

24  protected class were treated more favorably in these regards.

25  _____

26          [14] Plaintiff acknowledges this in her opposition to defendant's motion to dismiss.

                                        15

1    Therefore, in her first amended complaint plaintiff has failed to allege facts

2   establishing a prima facie case of disparate treatment.  Accordingly, plaintiff has failed to state a

3   cognizable claim for relief based on disparate treatment or disparate impact discrimination under

4   Title VII and those claims must be dismissed as presently alleged.

5        2) Hostile Work Environment

6    Title VII also prohibits an employer from "requiring people to work in a

7   discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

8   (1993)  To state a viable hostile work environment claim under Title VII, the plaintiff must

9   allege facts showing that her work environment was "permeated with 'discriminatory

10  intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of

11  the victim's employment and create an abusive working environment.'"  Harris, 510 U.S. at 21

12  (citation omitted).  See also Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986).

13   Here, the most arguably pertinent facts plaintiff has alleged with respect to a

14  hostile work environment claim concern the incident on December 8, 2006, when plaintiff was

15  allegedly confronted by two co-workers who demanded to speak to her immediately.  Plaintiff

16  claims the two co-workers raised their voices and yelled at her, accusing her of using the holiday

17  food drive and raffle for her own personal profit.  The two co-workers also allegedly threatened

18  to report the matter to the Internal Security Audit and to plaintiff's supervisor.

19   Assuming arguendo that this incident occurred exactly as alleged by plaintiff in

20  her first amended complaint, these allegations would not suffice to state a cognizable hostile

21  work environment claim.  This is because occasional or isolated incidents, unless especially

22  severe, are insufficient to support such a claim.  Rather, a plaintiff  must allege facts showing a

23  concerted and continuous pattern of harassment.  Faragher v. City of Boca Raton, 524 U.S. 775,

24  787 n.1 (1998); Harris, 510 U.S. at 23.  The alleged argument between co-workers was merely a

25  single isolated incident that cannot be characterized as particularly severe nor as a concerted or

26  continuos pattern of harassment.  See Brooks, 229 F.3d at 926 (rejecting a hostile work

16

environment claim where plaintiff alleged that she was harassed on a single occasion for a matter of minutes in a way that did not impair her ability to perform her job in the long-term); Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 590 (9th Cir. 1992) ("[I]solated incidents of sexual horseplay alleged by Candelore took place over a period of years and were not so egregious as to render Candelore's work environment 'hostile.'")  This is the only incident of harassment alleged by plaintiff.  Moreover, plaintiff has not alleged any facts suggesting that the incident was motivated by her race.  Instead, it appears the argument was simply a heated dispute between co-workers regarding their actions in connection with a volunteer holiday committee. Finally, plaintiff has not alleged that defendant played any role in the dispute.

        As to the remaining factual allegations of plaintiff's first amended complaint, even if all are taken as to be true, a cognizable hostile work environment claim would still not be presented because the conduct alleged is simply not severe enough to create an objectively hostile or abusive work environment.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998) (quoting Harris, 510 U.S. at 21).  "[C]onduct must be extreme to amount to a change in the terms and conditions of employment," lest Title VII become nothing more than "a 'general civility code.'"  Faragher, 524 U.S. at 788 (quoting Oncale, 523 U.S. at 80.)  See also Porter v. California Dept. of Corrections, 419 F.3d 885, 893 (9th Cir. 2005) (angry remarks and insults directed by co-workers at plaintiff, standing by themselves were not sufficiently severe or pervasive to support a hostile-environment claim).

        Aside from the lone argument with her coworkers, the events alleged by plaintiff involve clerical errors and a refusal to reschedule a job opening test.  While a brief delay in the receipt of a paycheck or repeated mishandling of a wage garnishment order may be infuriating, they are not extreme or severe enough so as to amount to a change in the terms and conditions of plaintiff's employment.

1    Accordingly, for these reasons the court finds that plaintiff's first amended

2  complaint fails to state a hostile work environment claim upon which relief may be granted.

3    3.  Retaliation

4    Title VII also prohibits retaliation by an employer "against an employee for

5  making a charge or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa,

6  503 F.3d 947, 953 (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

7    for an employer to discriminate against any of his employees . . .
     because [the employee] has opposed any practice made an
8    unlawful employment practice by [Title VII], or because [the
     employee] has made a charge, testified, assisted, or participated in
9    any manner in an investigation, proceeding, or hearing under [Title
     VII].

10

11  42 U.S.C. § 2000e-3 (2000).  To make out a *prima facie* case of retaliation under Title VII, a

12  plaintiff must allege facts demonstrating that "(1) she engaged in a protected activity, (2) she

13  suffered an adverse employment action, and (3) there was a causal link between her activity and

14  the employment decision."  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th

15  Cir. 2003) (quoting Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97

16  (9th Cir. 2003).  See also Poland, 494 F.3d at 1179-80.

17    The alleged actions that may state a discrimination claim based on an adverse

18  employment action and/or a cognizable claim of retaliation, involve the hiring supervisor's

19  attempt to dissuade plaintiff from pursuing her discrimination claim in December of 2006

20  followed by the decision in September 2007 not to interview plaintiff for an open Office

21  Technician position, a job that was later filled by the hiring of a Caucasian woman.  In this

22  regard, plaintiff's first amended complaint alleges that on December 12, 2006, she left work early

23  to meet with an attorney to discuss her discrimination compliant.  At that time plaintiff was

24  cautioned by a co-worker that if she filed her complaint "she would not grow," suggesting that

25  /////

26  /////

18

1    she would not promoted or hired in other departments.[15]  (FAC at 7 of 27.)  Sometime thereafter

2    plaintiff apparently filed her complaint, the response to which was delayed.  Plaintiff alleges that

3    sometime in September 2007, she spoke to Parrot regarding a vacant Office Technician position

4    and was informed that she would be interviewed for the position.  Plaintiff alleges, however,  that

5    she was never interviewed and that the position was given to a Caucasian woman "who had no

6    previous work experience in the Excise Tax Division."  (FAC at 10 of 27.)  While it is apparent

7    that plaintiff expressed her interest in the Office Technician position, plaintiff does not allege in

8    her first amended complaint that she  was qualified for the position, that the position was equal to

9    or better than her then-current position, or that she was as qualified or more qualified than the

10   individual ultimately hired.[16]   Thus it is not apparent from the allegations set forth in plaintiff's

11   first amended compliant that she suffered any adverse employment action.

12          Assuming arguendo that plaintiff could sufficiently allege that she engaged in a

13   protected activity and that she suffered an adverse employment action, a successful prima facie

14   claim of retaliation would also require a causal link between her protected activity and the

15   alleged adverse employment action.  Approximately nine months passed between the time

16   plaintiff was allegedly warned about the adverse consequences of filing her complaint by a BOE

17   hiring supervisor and the time plaintiff was allegedly passed over for the second Office

18   Technician position without an interview.  While courts may infer causation based on the

19   "proximity in time between the protected action and the allegedly retaliatory employment

20   decision," Ray, 217 F.3d at 1244 (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.

21   1987)), the nine month gap in time here, is possibly too great to infer a causal link.  See Manatt

22

23      [15]  As noted previously, in her opposition to defendant's motion to dismiss plaintiff for
     the first time identified the individual who 'threatened" her in this way as a "hiring supervisor"
     who had been with BOE for over ten years.  (Opp'n at 15 of 27.)

24

25      [16]  Again, in her opposition to the pending motion plaintiff does allege for the first time
     that she was more qualified than the Caucasian woman who was hired.  Were she to make such
     allegations in her complaint she may be able to state cognizable claims for discrimination and

26   retaliation.

1  v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (nine month lapse between protected

2  activity and alleged retaliatory employment decision too long to infer causation); see also

3  Cornwell v. Electra, 439 F.3d 1018, 1035-36 (9th Cir. 2006) (gap of eight months too great to

4  support an inference that complaint was related to termination).  Ultimately, "[w]hether an

5  adverse employment action is intended to be retaliatory is a question of fact that must be decided

6  in the light of the timing and the surrounding circumstances." Coszalter, 320 F.3d at 978.

7  Plaintiff, however, has not alleged any additional facts in her first amended complaint that would

8  allow the court to evaluate whether the timing of the hiring decision and the surrounding

9  circumstances support an inference of retaliation.

10          For all of these reasons, the court concludes that plaintiff's first amended

11  complaint fails to state a retaliation claim upon which relief may be granted and that claim must

12  therefore be dismissed.

13          C.  State Law Claims

14          In her first amended complaint, plaintiff also alleges a "breach of contract" and

15  "violations of employer/employee ethics policy."  (FAC at 2 of 27.)  While it is not clear what

16  law plaintiff is alleging the BOE violated, it appears plaintiff may be claiming some violation of

17  California law in this regard.

18          As noted above, the Eleventh Amendment bars suits against a state or its agencies,

19  regardless of the relief sought, absent the state's affirmative waiver of its immunity or

20  congressional abrogation of that immunity.  Pennhurst, 465 U.S. at 98-99.  Eleventh Amendment

21  immunity extends to governmental entities that are "arms of the state." Will, 491 U.S. at 70.

22  The Eleventh Amendment also bars federal suits, whether seeking damages or injunctive relief,

23  against state officials where the state is the real party in interest.  Pennhurst, 465 U.S. at 101-02;

24  Krainski, 2010 WL 2991397, at *2 .

25          Accordingly, to the extent plaintiff has attempted to allege a violation of state

26  law, such a claim may be barred by sovereign immunity.  In any event, as currently stated, the

1  allegation of the first amended complaint that the BOE breached its "employee contract and

2  ethics policy" is vague and conclusory.  Although the Federal Rules adopt a flexible pleading

3  policy, a complaint must give fair notice to the defendant and must allege facts that support the

4  elements of the claim plainly and succinctly.  Jones v. Community Redev. Agency, 733 F.2d 646,

5  649 (9th Cir. 1984).  Because plaintiff has failed to comply with the requirements of Fed. R. Civ.

6  P. 8(a), this claim must be dismissed.

7  III.  Leave to Amend

8         The undersigned has carefully considered whether plaintiff may be able to cure

9  the defects noted above in a second amended complaint.  In making this assessment, the

10 undersigned has taken into consideration plaintiff's pleadings and all briefing filed in connection

11 with the pending motion.  "Valid reasons for denying leave to amend include undue delay, bad

12 faith, prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818

13 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.

14 Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely

15 given, the court does not have to allow futile amendments).  However, when evaluating the

16 failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it

17 appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which

18 would entitle [her] to relief.'"  Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting

19 Haines v. Kerner, 404 U.S. 519, 521 (1972).  See also Weilburg v. Shapiro, 488 F.3d 1202, 1205

20 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is

21 absolutely clear that the deficiencies of the complaint could not be cured by amendment.")

22 (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

23        Here, it appears for the reasons discussed above, that leave to amend would be

24 futile with respect to any hostile work environment claim based on plaintiff's dispute with her

25 co-workers over the activities of the volunteer holiday committee as well as with respect to any

26 claims brought against defendant BOE under 42 U.S.C. § 1983.  In addition, any state law claims

against defendant BOE clearly appear to be barred by sovereign immunity and therefore

amendment with respect to such a claim would likely be futile.  The court, however, does not

find it apparent that plaintiff can allege no set of facts sufficient to support her claims of:  (1)

discrimination in the form of disparate treatment based on the failure to interview her in

September 2007 for the vacant Office Technician position for which an allegedly less qualified

Caucasian individual was subsequently hired; and (2) for retaliation in connection with the

failure to interview and hire her for that position after she had filed her discrimination complaint

despite being warned not to do so by a BOE hiring supervisor.[17]

Plaintiff's first amended complaint will therefore be dismissed, and she will be

granted leave to file a second amended complaint.  Plaintiff is cautioned that any amended

complaint she may elect to file should not attempt to re-allege claims found by the court to be not

cognizable but should instead focus on those singled out immediately above.  Should plaintiff

raise additional unsupported claims, or again raise the claims from her first amended complaint

that were found by the court to be deficient, defendant will likely file another meritorious motion

to dismiss and further leave to amend may not be granted.

Plaintiff is reminded that any amended complaint she elects to file must be

complete in itself without reference to prior pleadings that have been dismissed.  See Local Rule

220.  The court cannot refer to prior pleadings in order to make plaintiff's second amended

complaint complete.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Plaintiff's second

amended complaint must contain factual allegations describing the conduct and events which

underlie her claims against each defendant named in the pleading.  Plaintiff is also advised that in

identifying any individual by name in the second amended complaint she should include

allegations regarding the position with BOE held by the individual named.

---

[17]  To state such claims, plaintiff is directed to the court's discussion above including the
admonishment that in any second amended complaint she elects to file, she must include
allegations of facts that she asserted for the first time in her opposition to the pending motion to
dismiss.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's October 29, 2009 motion to dismiss (Doc. No. 17) is granted;

2. Defendant's motions to strike and for a more definite statement (Doc. No. 17) are denied as moot;

3. Plaintiff's first amended complaint (Doc. No. 14) is dismissed; and

4. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint"; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed without prejudice;

5. If BOE is named as a defendant in any second amended complaint plaintiff elect to file, defendant shall respond to the pleading within thirty days after it is filed and served.

DATED: September 19, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
jackson1387.order

23