1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALICIA B. JACKSON,

11            Plaintiff,                      No. CIV S-09-1387 FCD DAD PS

12        v.

13   BOARD OF EQUALIZATION,              FINDINGS AND RECOMMENDATIONS

14            Defendant.

15   _____/

16            This matter came before the court on December 17, 2010, for hearing of

17   defendant's amended motion to dismiss, motion to strike, and motion for more definite

18   statement.  Attorney Kristin M. Daily appeared for the moving party.  Plaintiff, proceeding pro

19   se, appeared on her own behalf.  Oral argument was heard, and the motions were taken under

20   submission.

21            For the reasons set forth below, the court will recommend that defendant's motion

22   to dismiss be granted in part and denied in part, that defendant's motions to strike and for a more

23   definite statement be denied.

24                                  BACKGROUND

25            Plaintiff initiated this action by filing her original complaint on May 19, 2009.  On

26   September 8, 2009, defendant moved to dismiss that complaint.  Plaintiff did not file written

1

1   opposition to that motion but instead, on October 8, 2009, filed a motion seeking leave of court

2   to file an amended complaint.  The court granted both defendant's motion to dismiss and

3   plaintiff's motion for leave to file an amended complaint.

4          On October 9, 2009, plaintiff filed her amended complaint.  On September 20,

5   2010, the court granted defendant's motion to dismiss the amended complaint but granted

6   plaintiff further leave to amend.

7          On October 26, 2010, plaintiff filed her second amended complaint which is now

8   the operative pleading.  On November 19, 2010, defendant filed the amended motion to dismiss

9   now pending before the court.  On December 13, 2010, plaintiff filed a late opposition to

10  defendant's motion to dismiss.

11          In her second amended complaint, plaintiff alleges as follows.[1]  On or about

12  November 22, 2006, defendant California Board of Equalization ("BOE") asked employees to

13  volunteer to participate in a yearly holiday committee.[2]  (Sec. Am. Compl. (Doc. No. 28) at 9.)[3]

14  Plaintiff signed up to be a committee vice chair and was the only African American holiday

15  committee member.  (Id. at 9.)  In order to raise money for the holiday food drive, plaintiff

16  sought permission to purchase items for a raffle.  (Id.)  The committee chairperson agreed to

17  reimburse plaintiff and plaintiff then purchased items for the raffle.  (Id.)  Sometime thereafter

18  plaintiff noticed that dates for the raffle were changed to days when employees were not at work,

19

20          [1] As was the case with her first amended complaint, plaintiff's second amended
    complaint is replete with the recounting of trivial and inconsequential disputes and allegations,
21  which plaintiff presumably believes bolsters her claims but only serve to cloud the potentially
    consequential issues raised by some of plaintiff's allegations.  The court had hoped that plaintiff
22  would heed the direction offered by the court in dismissing plaintiff's first amended complaint
    with leave to amend and, in response, submit a more clear and concise second amended
    complaint.  Unfortunately, that is not the case.

23
            [2] For every date identified by plaintiff in her second amended complaint she alleges that
24  the events alleged occurred "on or about" the given date.  The court will omit that qualifying
    phrase from the summary of plaintiff's factual allegations.
25
            [3] Page number citations such as this one are to the page number reflected on the court's
26  CM/ECF system and not to page numbers assigned by the parties.

1  that incorrect or misleading information was being disseminated about the raffle, and that

2  supplies were not being made readily available.  (Id.)  On December 6, 2006, plaintiff was

3  informed that she would not be reimbursed for her purchases in connection with the raffle.  (Id. at

4  9-10.)

5        On December 8, 2006, plaintiff was approached by "CAC board members/co

6  workers," Elizabeth Reedman and Judy Weyhe, who demanded to speak with plaintiff

7  immediately.[4]  (Id. at 10.)  Plaintiff was on the phone with a client and requested that the two co-

8  workers leave her work cubicle.  (Id.)  They did not leave, began yelling at plaintiff, and

9  displayed an "aggressive manner" and "aggressive body language" and informed plaintiff that

10  "using the food drive for the (sic) personal gain is against the law and [that] they will be

11  contacting ISAD (Internal Security and Audit Dept) to prosecute her."  (Id.)  The two co-workers

12  also threatened to inform plaintiff's supervisor about her conduct.  (Id.)  Plaintiff repeated her

13  request that the two leave her cubicle and the two co-workers finally left when plaintiff stood and

14  repeated her request a third time.  (Id. at 10-11.)

15        On December 11, 2006, plaintiff contacted Patrick Finnegun, her union

16  representative, regarding the December 8, 2006 incident with co-workers Reedman and Weyhe.

17  (Id. at 11.)  Initially Mr. Finnegun agreed to help plaintiff with this issue but shortly thereafter

18  declined to do so.  (Id.)

19        On December 12, 2006, plaintiff completed a BOE absence request form so that

20  she could leave work early to meet with an attorney regarding her discrimination complaint.  (Id.

21  at 12.)  Plaintiff met with Hiring Supervisor Susan Sineto to obtain approval for her absence

22  from work.  (Id.)  Sineto had been a BOE employee for more than 10 years, was responsible for

23  hiring plaintiff and, according to plaintiff, had "great ties and influence at BOE."  (Id.)  Upon

24  learning about plaintiff's pending discrimination complaint, Sineto told plaintiff:

25

26      [4]  According to plaintiff, "CAC is a group of BOE employees who BOE appoints to regulate fund raising projects."  (Sec. Am. Compl. (Doc. No. 28) at 6.)

3

1

> You do want to move up the career ladder here, right?  I know you
> have been talking about what classes you need to take to become a
> Business Tax Representative, well I would not go through with this
> discrimination complaint because if you do no one will hire you,
> you will be labeled a troublemaker.  You know how people talk
> here; you do want to move up don't you.

2

3

4

5   (Id.)

6              On January 2, 2007, plaintiff sent an e-mail inquiring about the status of her

7   discrimination complaint to Dan Tokutomi, Richard Parrot, and Kenneth Lawson.[5]  (Id. at 13.)

8   On January 3, 2007, plaintiff received an e-mail response from Parrot, stating that Tokutomi

9   would answer her inquiry.  (Id.)  On January 11, 2007, plaintiff's wages were garnished "because

10  BOE was sending the money that was coming out of her paycheck and sending it to pay another

11  employees (sic) date (sic) with the Franchise Tax Board."  (Id.)  Plaintiff did have a tax bill, but

12  plaintiff's bill was current and plaintiff had arranged a payment plan.  (Id. at 13.)  The person "in

13  control" of this "misreporting" was Erika Fischer, a friend of Susan Sineto.  (Id. at 12-13.)

14             On January 17, 2007, plaintiff again e-mailed Parrot, Tokutomi and Lawson

15  inquiring about the status of her discrimination complaint but received no response.  (Id. at 13.)

16  On January 22, 2007, plaintiff was informed that Lynn Bartolo, the Division Chief, would

17  eventually answer her complaint.  (Id. at 14.)  On March 12, 2007, plaintiff still had not received

18  an answer to her complaint.  (Id.)  Plaintiff e-mailed Bartolo about the status of her

19  discrimination complaint and was informed by Bartolo that "labor relations had closed their file

20  and nothing would be done."  (Id.)  Bartolo told plaintiff that she would have to fill out another

21  discrimination complaint.  (Id.)  Believing she was getting the "run around," plaintiff contacted

22  the Equal Employment Opportunity Commission ("EEOC").[6]  (Id.)  On May 5, 2007, plaintiff

23  /////

24

---

25          [5] Plaintiff does not allege when she filed her discrimination complaint with the BOE.

26          [6] Plaintiff does not allege the date upon which she contacted the EEOC.

1   received a corrected W-2 form produced by Erika Fischer.[7]  (Id.)

2           Sometime thereafter, plaintiff complained to her supervisor, Ken Lawson, that she

3   had been receiving "differential treatment" from co-workers and supervisors.  (Id. at 15.)

4   Specifically, plaintiff's co-workers would call her names, slam cabinet doors when she was

5   around and run into her while walking in the hallway.  (Id.)  Plaintiff also "had to endure

6   lesbian[] co-workers making comments about her breast and shape, she had to witness some of

7   her team members who were women getting massages from each other."  (Id.)  Lawson advised

8   plaintiff that "it's probably all in your head."  (Id.)

9           In April of 2007 plaintiff's doctor took her off work due to stress.  (Id. at 16.)  The

10  BOE normally announces when an employee takes a leave of absence so that other employees

11  can donate their accrued time-off to the employee on leave.  (Id.)  Plaintiff asked Fischer not to

12  announce that she was taking a leave of absence.  (Id.)  However, Fischer nonetheless announced

13  that plaintiff was taking a leave of absence due to work related stress.  (Id.)

14          In July of 2007 plaintiff was interviewed for a position as an Office Technician

15  with the BOE but was not hired.  (Id. at 20.)  The person hired for the position was Asian, was

16  the sister of another employee who had worked for Parrot, had previously worked in a bar and

17  had no experience working in the Excise Tax Division.  (Id.)

18          In August of 2007 plaintiff was informed that she could not reschedule a test for a

19  Tax Technician II position, even though her request was based upon the fact that she was

20  returning from a funeral in Texas.  (Id. at 17.)  However, a Caucasian co-worker who worked "on

21  the same team" as plaintiff was allowed to reschedule her Tax Technician II test.  (Id.)

22          In September of 2007 plaintiff was notified by the Franchise Tax Board that "they

23  were going to reissue the garnishment order because BOE still had failed to provide them with

24  _____

25      [7]  Plaintiff does not explain in her second amended complaint the genesis of this
    "corrected W-2" or its significance to her other allegations.  In any event, plaintiff alleges that
26  she received a second "corrected W-2" on June 6, 2007.  (Sec. Am. Compl. (Doc. No. 28) at 17.)

1   evidence to show" that plaintiff had been making the required monthly payments to the Franchise

2   Tax Board.  (Id. at 18.)  Plaintiff had "to call several times and leave several message[s] before

3   the problem was fixed."  (Id.)

4          That same month plaintiff spoke to Richard Parrot about another open position as

5   a BOE Office Technician and he told plaintiff that she would be interviewed for the position.

6   (Id. at 19.)  However, plaintiff was not interviewed and the opening was filled by a Caucasian

7   woman with no previous work experience in the Excise Tax Division.  (Id.)  In this regard,

8   plaintiff alleges that she was "qualified for the Office Technician [position]; she had the

9   knowledge of the Excise Tax Division."  (Id. at 21.)  Moreover, plaintiff "was interviewed and

10  tentatively hired for an Office Technician position with the Dept of Health and [the] Dept of

11  Education."  (Id.)

12         In October of 2007 plaintiff was not paid on schedule and was told that "she had

13  an outstanding balance owed to BOE."  (Id. at 22.)  It is Erika Fischer's responsibility to report to

14  the State Controller those individuals with outstanding balances owed to the BOE.  (Id. at 23.)

15         In November of 2007 plaintiff left the BOE for a position with the California

16  Department of Corrections.  (Id.)  In July of 2008, plaintiff received a check from the BOE for

17  her wrongfully withheld wages in the amount of $644.  (Id.)

18         DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

19         Defendant seeks dismissal of plaintiff's second amended complaint with

20  prejudice.  In moving to dismiss defendant argues that: 1) plaintiff has failed to state a cause of

21  action for discrimination under Title VII; 2) plaintiff has failed to state a cause of action for

22  hostile work environment; 3) plaintiff has failed to allege that she suffered an adverse

23  employment action; 4) plaintiff has failed to allege discriminatory intent; 5) plaintiff has failed to

24  state a cognizable cause of action for retaliation under Title VII; and 6) this court lacks

25  jurisdiction to adjudicate plaintiff's state law claims.

26  /////

6

1    LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

2          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3    sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

4    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

6    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

7    relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Thus,

8    a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the

9    plaintiff's claims, even if the plaintiff's allegations are true.

10          In determining whether a complaint states a claim on which relief may be granted,

11   the court accepts as true the allegations in the complaint and construes the allegations in the light

12   most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

13   United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

14   stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

15   520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

16   form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The

17   court is permitted to consider material which is properly submitted as part of the complaint,

18   documents not physically attached to the complaint if their authenticity is not contested and the

19   plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los

20   Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

21          Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

22   complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

23   state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v.

24   Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  The plaintiff must allege with at

25   least some degree of particularity overt acts which the defendants engaged in that support the

26   plaintiff's claims.  Jones, 733 F.2d at 649.  A complaint must also contain "a short and plain

7

1  statement of the grounds for the court's jurisdiction" and "a demand for the relief sought."  Fed.

2  R. Civ. P. 8(a)(1) & 8(a)(3).

3                                ANALYSIS

4  I.  Title VII

5            Title VII makes it unlawful for an employer to "discriminate against any

6  individual with respect to [her] compensation, term, conditions, or privileges of employment,

7  because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).

8            1)  Discrimination

9            It is well-settled that Title VII is concerned not only with intentional

10 discrimination, but also with employment practices and policies that lead to disparities in the

11 treatment of classes of workers.  See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-31

12 (1971); Connecticut v. Teal, 457 U.S. 440, 446 (1982)  Thus, a plaintiff alleging discrimination

13 under Title VII may proceed under two theories: disparate treatment or disparate impact.  Ricci v.

14 DeStefano,___U.S.___, ___. 129 S. Ct. 2658, 2672 (2009); Watson v. Fort Worth Bank & Trust,

15 487 U.S. 977, 986-87 (1988); The Committee Concerning Community Improvement v. City of

16 Modesto, 583 F.3d 690, 711 (9th Cir. 2009).  A person is discriminated against through disparate

17 treatment "when he or she is singled out and treated less favorably than others similarly situated

18 on account of race."  McGinest v. GTE Service Corp., 360 F.3d 1103, 1121 (9th Cir. 2004)

19 (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)).  See also Cornell v.

20 Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  While the disparate treatment

21 theory requires proof of discriminatory intent, intent is irrelevant to a disparate impact claim.

22 Watson, 487 U.S. at 988; Garcia v. Spun Steak Co., 998 F.2d 1480, 1484 (9th Cir. 1993).

23 "[I]mpact analysis is designed to implement Congressional concern with 'the consequences of

24 employment practices, not simply the motivation.'"  Garcia, 998 F.2d at 1484 (quoting Rose v.

25 Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990) (citations omitted)).  A prima facie case

26 of disparate impact is typically achieved by statistical evidence demonstrating the selection bias

8

1   of an employment practice.  Lawrence v. Dept. of Interior, 525 F.3d 916, 921 (9th Cir. 2008);

2   Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002).  Here, plaintiff has failed to allege any facts

3   that would suggest a disparate impact claim.  Accordingly, the court will assess whether

4   plaintiff's second amended complaint alleges a cognizable discrimination claim based on

5   disparate treatment.

6          A plaintiff in a disparate treatment case bears the burden of alleging and proving

7   that the defendant employer intentionally discriminated against her.  Texas Dep't of Community

8   Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGinest, 360 F.3d at 1122.  A plaintiff must,

9   therefore, allege and prove discriminatory motive on the part of the defendant.  International

10   Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Pejic v. Hughes

11   Helicopter, Inc., 840 F.2d 667, 672 (9th Cir. 1988).  A plaintiff may prove intent through either

12   "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than

13   not motivated the employer."  Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007); Pejic,

14   840 F.2d at 672.  An example of direct evidence of such intent is an employer's use of a racial

15   slur or epithet.  Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1141 (9th Cir. 2006);

16   Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006).  Here, plaintiff

17   has failed to allege any facts that would suggest the existence of direct evidence of discriminatory

18   intent on the part of defendant.

19          Alternatively, a plaintiff may rely on the familiar McDonnell Douglas burden

20   shifting framework to prove discriminatory intent.  McDonnell Douglas Corp. v. Green, 411 U.S.

21   792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008).

22   Under the McDonnell-Douglas test for assessing Title VII discrimination claims, the plaintiff can

23   establish a *prima facie* case by showing:

24          (i) that [s]he belongs to a racial minority; (ii) that [s]he applied and
                   was qualified for a job for which the employer was seeking

25          applicants; (iii) that, despite [her] qualifications, [s]he was
                   rejected; and (iv) that, after [her] rejection, the position remained

26   /////

9

1       open and the employer continued to seek applicants from persons
2       of complainant's qualifications.

3   <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802.  <u>See also</u> <u>Noyes v. Kelly Services</u>, 488 F.3d 1163,

4   1168 (9th Cir. 2007).

5       Once plaintiff establishes a prima facie case of discrimination, the burden shifts to

6   the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment

7   action.  <u>McDonnell Douglas</u>, 411 U.S. at 802-803; <u>Diaz v. Eagle Produce Ltd. Partnership</u>, 521

8   F.3d 1201, 1207 (9th Cir. 2008).  If defendant meets its burden in that regard, the burden shifts

9   back to plaintiff to establish that defendant's proffered reason was a pretext for discrimination.

10  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993); <u>Diaz</u>, 521 F.3d at 1207.  "The ultimate

11  burden of persuading the trier of fact that the defendant intentionally discriminated against the

12  plaintiff remains at all times with the plaintiff."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. at 507

13  (quoting <u>Burdine</u>, 450 U.S. at 253).

14      Here, plaintiff alleges in her second amended complaint in relevant part, as

15  follows.  That she is African-American.  (Sec. Am. Compl. (Doc. No. 28) at 2.)  That in July

16  2007 she interviewed for an open position as a BOE Office Technician.  (<u>Id.</u> at 20.)  That she is

17  well qualified for the position of BOE Office Technician based on her experience within the

18  Excise Tax Division and that she "was in the top three ranking" of applicants on the list the

19  "BOE was using[.]"  (<u>Id.</u> at 21-22.)  That despite her qualifications, she was rejected for the open

20  position and that defendant eventually hired a less experienced person.  (<u>Id.</u> at 20.)  Plaintiff also

21  alleges that in September of 2007, she again inquired about an open position as a BOE Office

22  Technician.  (<u>Id.</u> at 19.)  Plaintiff was told she would be interviewed for that position but never

23  was.  (<u>Id.</u>)  Ultimately, defendant again hired a person lacking relevant prior experience.  (<u>Id.</u>)

24      Defendant does not dispute plaintiff's allegations that she belongs to a racial

25  minority and expressed her interest in the open BOE Office Technician positions that others were

26  selected to fill, nor could they dispute such allegations by way of their motion to dismiss.

1    Defendant does, however, argue that plaintiff has failed to allege that she was qualified for the

2    Office Technician position.  (Am. MTD (Doc. No. 33-1) at 7.)

3                          With respect to her qualifications, plaintiff alleges that:

4                          Alicia [referring to plaintiff herself in the third person] was/is
                           qualified for the Office Technician; she had the knowledge of the
5                          Excise Tax Division.  Ms. Jackson was interviewed and tentatively
                           hired for an Office Technician position with the Dept of Health and
6                          Dept of Education.  Ken Lawson, Alicia (sic) supervisor can attest
                           to how many phone calls he received from other departments who
7                          wanted to hire Alicia.

8                                                        ***

9                          Unfortunately, Alicia was not []reachable on the permanent full
                           time hiring list, she was ranked four.  To get picked up by a state
10                         agency you have to be in the top three testing ranks on the hiring
                           list.  Ms. Jackson was reachable on [the] BOE Office Technician
11                         list, because it was a permanent limited term list.  On the limited
                           term list, which BOE was using Alicia was in the top three ranking.

12

13   (Sec. Am. Compl. (Doc. No. 28) at 21-22.)

14                         Defendant argues that plaintiff's allegation that "[u]nfortunately, Alicia was not

15   []reachable on the permanent full time hiring list, she was ranked four," establishes that plaintiff

16   "was not qualified for the position."  (Am. MTD (Doc. No. 33-1) at 7.)  The court concludes that,

17   understandably perhaps, defendant's argument in this regard misconstrues plaintiff's allegation.

18                         In her second amended complaint, plaintiff also alleges that she "spoke to Richard

19   Parrot . . . regarding an Office Technician position."  (Sec. Am. Compl. (Doc. No. 28) at 19.)

20   Plaintiff alleges that she "did interview for a similar position in July 2007" to fill a vacancy

21   created after another employee "who had worked as Richard Parrot's Office Technician"

22   received a promotion.  (Id. at 20.)  According to plaintiff, Richard Parrot is an employee of the

23   BOE.  (Id. at 6.)  With respect to employment within the BOE plaintiff claims that she "was

24   reachable on [the] BOE Office Technician list, because . . . . On the limited term list, which [the]

25   BOE was using [she] was in the top three ranking."  (Id. at 22.)  In this regard, plaintiff's

26   allegation that she "was not reachable on the permanent full time hiring list [because] she was

                                                        11

1   ranked four" is in reference to plaintiff's unrelated allegation that she "was interviewed and

2   tentatively hired for an Office Technician position with the Dept of Health and Dept of

3   Education."   (Id. at 21.)   Simply put, in her second amended complaint the court is satisfied that

4   plaintiff has alleged that she was not ranked high enough to be hired as an Office Technician by

5   an agency outside of the BOE, but that she was ranked high enough to be hired as an Office

6   Technician by the BOE.

7            As noted above, for purposes of this motion to dismiss, the court must accept as

8   true the allegations of plaintiff's second amended complaint and construes those allegations in

9   the light most favorable to the plaintiff.   Accepting the above allegations as true, plaintiff's

10  second amended complaint states a cognizable claim for relief based on defendant's alleged

11  discriminatory treatment in failing to hire plaintiff for the open BOE Office Technician positions

12  in July of 2007 and September of 2007 and instead filling those positions with less qualified

13  applicants.   See Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005)

14  ("To make out a prima facie case under McDonnell Douglas, a plaintiff must show that (1) she

15  belongs to a protected class; (2) she applied for and was qualified for the position she was

16  denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position

17  with an employee not of plaintiff's class, or continued to consider other applicants whose

18  qualifications were comparable to plaintiff's after rejecting plaintiff.").   Accordingly, defendant's

19  motion to dismiss plaintiff's claim that defendant discriminated against plaintiff by failing to hire

20  plaintiff for the open BOE Office Technician positions in July of 2007 and September of 2007,

21  should be denied.

22            With respect to plaintiff's allegations that the BOE interfered with he union

23  representation in connection with her involvement in the holiday committee, the corrected W-2

24  forms, the BOE's refusal to reschedule plaintiff's test for a Tax Technician II position, the public

25  announcement of plaintiff's leave of absence, the September 2007 garnishment order and

26  plaintiff's untimely paycheck in October of 2007, the court has reviewed those allegations and

1   finds them insufficient to state a cognizable claim that plaintiff suffered any adverse employment

2   action or that individuals outside her protected class were treated more favorably than she.

3   Plaintiff's allegations regarding these matters, at worst, reflect that the BOE was an imperfect,

4   inflexible employer that inconvenienced plaintiff through multiple clerical mistakes.  While

5   perhaps irritating, even if true, plaintiff's allegations do not suggest any adverse employment

6   action that materially affected the terms and conditions of her employment.[8]  See Chuang v.

7   University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1126 (9th Cir. 2000) (For a Title

8   VII discrimination claim, an adverse action is one that "materially affect[s] the compensation,

9   terms, conditions, or privileges of the [plaintiff's] employment.").  Plaintiff's allegations with

10  respect to the matters noted above do not suggest any serious job actions, such as the initiating of

11  an investigation against an employee or the transfer of job duties such as those that have been

12  found to constitute adverse employment actions.  See Poland, 494 F.3d at 1180 (citing Ulrich v.

13  City and County of San Francisco, 308 F.3d 968, 977 (9th Cir. 2002) and Yartzoff v. Thomas,

14  809 F.2d 1371, 1376 (9th Cir. 1987)).  These allegations, even if true, would fail to establish a

15  discriminatory intent on the part of the BOE.[9]

16          Accordingly, defendant's motion to dismiss for failure to state a cognizable claim

17  of relief based on these allegations of discrimination under Title VII should be granted.

18  /////

19  /////

20

21      [8]  The same McDonnell Douglas elements apply to allegations such as  these.  Thus,
    plaintiff must allege facts showing that (1) she belongs to a protected class; (2) she was qualified
22  for her position; (3) she was subject to an adverse employment action; and (4) similarly situated
    individuals outside her protected class were treated more favorably.  Chuang v. University of
23  California Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).

24      [9]  The court previously dismissed most of these allegations in its September 20, 2010
    order dismissing plaintiff's first amended complaint with leave to amend.  (Order-September 20,
25  2010 (Doc. No. 27.))  In that order, plaintiff was advised not to attempt to re-allege these claims
    but to instead focus on those claims the court found potentially cognizable.  Plaintiff, however,
26  did not heed the court's direction.

1           2)  Hostile Work Environment

2           Title VII also prohibits an employer from "requiring people to work in a

3   discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

4   (1993).  To state a viable hostile work environment claim under Title VII, the plaintiff must

5   allege facts showing that her work environment was "permeated with 'discriminatory

6   intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of

7   the victim's employment and create an abusive working environment.'"  Harris, 510 U.S. at 21

8   (citation omitted).  See also Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986) ("For

9   sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the

10  conditions of [the victim's] employment and create an abusive working environment.") (internal

11  quotation and citation omitted).

12          Plaintiff has alleged in her second amended complaint that on December 8, 2006,

13  plaintiff was confronted by two co-workers, Reedman and Weyhe, who demanded to speak to her

14  immediately.  (Sec. Am. Compl. (Doc. No. 28) at 10.)  Plaintiff claims the two co-workers yelled

15  at her, knocked over the wall of her cubicle, pointed their fingers at her while accusing her of

16  using the holiday food drive for her own personal profit.  (Id.)  The two co-workers also allegedly

17  threatened to report the matter to the Internal Security Audit and to plaintiff's supervisor.  (Id.)

18          Even assuming arguendo that this incident occurred as alleged by plaintiff in her

19  second amended complaint, these allegations would not suffice to state a cognizable hostile work

20  environment claim.[10]  This is because occasional or isolated incidents, unless especially severe,

21  are insufficient to support such a claim.  Rather, a plaintiff  must allege facts showing a concerted

22  and continuous pattern of harassment.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 n.1

23

24          [10]  Again, plaintiff made these same allegations in her first amended complaint.  On
    September 20, 2010, the court found that the allegations failed to state a cognizable hostile work
25  environment claim and denied plaintiff leave to amend with respect to this claim.  (See Order
    Sept. 20, 2010 (Doc. No. 27) at 16, 21.)  Unfortunately, plaintiff ignored the court's order and re-
26  alleged the same claim that was previously dismissed without leave to amend.

1   (1998); <u>Harris</u>, 510 U.S. at 23.  The alleged argument between co-workers was merely a single

2   isolated incident that cannot be characterized as particularly severe nor as a concerted or

3   continuos pattern of harassment.  <u>See</u> <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 926 (9th Cir.

4   2000) (rejecting a hostile work environment claim where plaintiff alleged that she was harassed

5   on a single occasion for a matter of minutes in a way that did not impair her ability to perform

6   her job in the long-term); <u>Candelore v. Clark County Sanitation Dist.</u>, 975 F.2d 588, 590 (9th Cir.

7   1992) ("[I]solated incidents of sexual horseplay alleged by Candelore took place over a period of

8   years and were not so egregious as to render Candelore's work environment 'hostile.'")  This is

9   the only incident of harassment alleged by plaintiff involving the identified co-workers.

10  Moreover, plaintiff has not alleged any facts suggesting that the incident was motivated by her

11  race.  Instead, it appears from her allegations that the argument was simply a heated dispute

12  between co-workers regarding their actions in connection with a volunteer holiday committee.

13  Finally, plaintiff has not alleged that defendant BOE played any role in the dispute.

14          Plaintiff has also alleged in her second amended complaint that her fellow co-

15  workers and supervisors were "name calling," "slamming cabinets," "physically running into

16  her," "making comments about her breast (sic) and shape," and that plaintiff had to "witness

17  some of her team members who were women getting massages from each other who were"

18  lesbians.  (Sec. Am. Compl. (Doc. No. 28) at 15.)

19          The court finds these allegations to be too vague and conclusory to state a claim

20  upon which relief can be granted.  Specially, plaintiff has not identified a single co-worker or

21  supervisor allegedly involved in these alleged actions nor provided a date on which any of these

22  incidents allegedly occurred.  Moreover, plaintiff has made only bare assertions, devoid of any

23  factual details, concerning the conduct at issue.  To state a claim on which relief may be granted,

24  the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

25  <u>Twombly</u>, 550 U.S. at 570.  Although the Federal Rules of Civil Procedure adopt a flexible

26  pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must

15

1    allege facts that state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2);

2    Jones, 733 F.2d at 649.  "A pleading that offers 'labels and conclusions' or 'a formulaic

3    recitation of the elements of cause of action will not do.'  Nor does a complaint suffice if it

4    tenders 'naked assertions' devoid of 'further factual enhancements.'"  Ashcroft v. Iqbal,

5    ___U.S.___,___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555, 557).  A

6    plaintiff must allege with at least some degree of particularity overt acts which the defendants

7    engaged in that support the plaintiff's claims.[11]  Jones, 733 F.2d at 649.

8              As to the remaining factual allegations of plaintiff's second amended complaint,

9    even if all are taken to be true, a cognizable hostile work environment claim would still not be

10   presented because the conduct alleged is simply not sufficiently severe to create an objectively

11   hostile or abusive work environment.  "Conduct that is not severe or pervasive enough to create

12   an objectively hostile or abusive work environment – an environment that a reasonable person

13   would find hostile or abusive – is beyond Title VII's purview."  Oncale v. Sundowner Offshore

14   Services, Inc., 523 U.S. 75, 81 (1998) (quoting Harris, 510 U.S. at 21).  "[C]onduct must be

15   extreme to amount to a change in the terms and conditions of employment," lest Title VII

16   become nothing more than "a 'general civility code.'"  Faragher, 524 U.S. at 788 (quoting

17   Oncale, 523 U.S. at 80.)  See also Porter v. California Dept. of Corrections, 419 F.3d 885, 893

18   (9th Cir. 2005) (angry remarks and insults directed by co-workers at plaintiff, standing by

19   themselves were not sufficiently severe or pervasive to support a hostile-environment claim).

20             Aside from the lone argument with her co-workers and the vague and conclusory

21   allegation concerning cabinet slamming and inappropriate sexual comments, the events alleged

22   by plaintiff involve clerical errors and a refusal to reschedule a job opening test.  While a brief

23   delay in the receipt of a paycheck or repeated mishandling of a wage garnishment order may be

24   _____

25             [11]  Having found that these allegations fail to state a claim upon which relief can be
     granted, the court need not consider defendant's argument in support of dismissal that plaintiff
     did not exhaust her administrative remedies with respect to her allegations of a hostile work

26   environment based upon sex.  (Am. MTD (Doc. No. 33-1) at 5.)

1    irritating or, at some point, even infuriating, they are not extreme or severe enough so as to

2    amount to a change in the terms and conditions of plaintiff's employment.

3           Accordingly, for the reasons stated above, the court finds that plaintiff's second

4    amended complaint fails to state a hostile work environment claim upon which relief may be

5    granted and defendant's motion to dismiss this claim should therefore be granted.

6           3)  Retaliation

7           Title VII also prohibits retaliation by an employer "against an employee for

8    making a charge or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa,

9    503 F.3d 947, 953 (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

10                for an employer to discriminate against any of his employees . . .
                  because [the employee] has opposed any practice made an
11                unlawful employment practice by [Title VII], or because [the
                  employee] has made a charge, testified, assisted, or participated in
12                any manner in an investigation, proceeding, or hearing under [Title
                  VII].
13

14   42 U.S.C. § 2000e-3 (2000).  To make out a *prima facie* case of retaliation under Title VII, a

15   plaintiff must allege facts demonstrating that "(1) she engaged in a protected activity, (2) she

16   suffered an adverse employment action, and (3) there was a causal link between her activity and

17   the employment decision."  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th

18   Cir. 2003) (quoting Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1196-97

19   (9th Cir. 2003).  See also Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007) ("To

20   establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected

21   activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link

22   between the plaintiff's protected activity and the adverse employment action.").

23           As to the first element of the prima facie case, an employee's formal or informal

24   complaint regarding unlawful employment practices is "protected activity," and a plaintiff need

25   only show that her belief that an unlawful employment practice occurred was "reasonable."  See

26   Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000);

17

1   Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994).  As to the second element, for purposes of a

2   retaliation claim, a challenged action must be "materially adverse," which means that it would

3   dissuade a reasonable worker from exercising protected rights.  See Burlington N. & Santa Fe

4   Ry. Co. v. White, 548 U.S. 53, 68 (2006).  As to the third element, a plaintiff may establish a

5   causal link between the protected activity and the adverse action by circumstantial evidence,

6   including the employer's knowledge of the protected activity and a proximity in time between the

7   protected action and the adverse employment act.  Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir.

8   1988).  See also Passantino, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a

9   reasonable period of time after complaints of discrimination have been made, retaliatory intent

10  may be inferred.").

11          Here, defendant argues that plaintiff has failed to allege that she suffered an

12  adverse employment action.  In this regard, defendant argues that plaintiff has failed to allege that

13  she was qualified for the open BOE Office Technician positions, that the Office Technician

14  position represented a promotion for plaintiff or that the individuals hired for the open BOE

15  Office Technician positions were less qualified then she.  (Am. MTD (Doc. No. 33-1) at 6-7.)  In

16  this regard, defendant asserts that the Office Technician position plaintiff sought was "a lateral

17  transfer" from her position as a Tax Technician.[12]  (Id. at 7.)

18          In her second amended complaint plaintiff alleges as follows.  On December 12,

19  2006, she met with hiring supervisor Susan Sineto so that Sineto could approve plaintiff's

20  request to leave work early to meet with an attorney to discuss plaintiff's discrimination

21  complaint.  (Sec. Am. Compl. (Doc. No. 28) at 12.)  Sineto had worked for the BOE for more

22  then ten years and was responsible for hiring plaintiff.  (Id.)  Upon learning of plaintiff's

23  intentions, Sineto told plaintiff:

24  _____

25  [12]  In support of this contention, defendant cites the job specifications of a Tax Technician
    and an Office Technician, which defendant argues show that both positions required "the same
    minimum qualifications."  (Am. MTD (Doc. No. 33-1) at 7.)  Defendant does not however make
26  any assertions with respect to the benefits or compensation offered for the respective positions.

18

1
2
3
4

> You do want to move up the career ladder here, right?  I know you have been talking about what classes you need to take to become a Business Tax Representative, well I would not go through with this discrimination complaint because if you do no one will hire you, you will be labeled a troublemaker.  You know how people talk here; you do want to move up don't you.

5   (Id.)  Thereafter plaintiff applied in July of 2007 and September of 2007 for job openings as a

6   BOE Office Technician but was passed over each time for candidates with "no previous work

7   experience in the Excise Tax Division," despite the fact that plaintiff was qualified for the

8   position of Office Technician, and was "in the top three ranking" on the BOE's applicant list.

9   (Id. at 19-20, 22.)

10              Accepting the above allegations as true and construing them in the light most

11  favorable to plaintiff as required, the court finds that plaintiff has alleged in her second amended

12  complaint that she engaged in a protected activity and that she suffered an adverse employment

13  action as a result.  Moreover, plaintiff has alleged that she was qualified for the open BOE Office

14  Technician positions and that those positions were ultimately filled by less qualified individuals.

15  While plaintiff has failed to allege that the Office Technician position represented a promotion

16  from her position as a Tax Technician, that failure is not fatal to her claim even assuming the

17  accuracy of defendant's assertion that the Office Technician position plaintiff sought represented

18  only a lateral transfer.[13]  See McAlindin v. County of San Diego, 192 F.3d 1226, 1239 (9th Cir.

19  1999) ("[I]f a transfer to a 'position was not made available to [plaintiff] because of her

20  involvement in protected activities,' then she suffered an adverse employment decision.")

21  (quoting Bouman v. Block, 940 F.2d 1211, 1229 (9th Cir. 1991); Randlett v. Shalala, 118 F.3d

22  857, 862 (1st Cir. 1997) (noting that denial of transfer could constitute adverse employment

23  action where transfer was "common enough practice and so arguably a 'privilege' of

24

25
26

[13]  In the July 24, 2008 Charge of Discrimination plaintiff filled with the California Department of Fair Employment & Housing, which was presented to the Equal Employment Opportunity Commission, plaintiff specifically alleged that from March 12, 2007 to November 15, 2007, she was "denied promotions."  (Am. MTD, Ex. 1 (Doc. No. 30-1) at 2.)

1   employment"); McCarthy v. R.J. Reynolds Tobacco Co., No. CIV. 2:09-2495 WBS DAD, 2011

2   WL 1740599 at *7 (E.D. Cal. May 4, 2011) ("Denial of a transfer or promotion could certainly

3   dissuade a reasonable worker from engaging in a protected activity."); see also National R.R.

4   Passenger Corp. V. Morgan, 536 U.S. 101, 114 (2002) ("Discrete acts such as . . . denial of

5   transfer . . . are easy to identify.  Each incident of discrimination and each retaliatory adverse

6   employment decision constitutes a separate actionable 'unlawful employment practice.'").

7          Defendant also argues that nine months elapsed between plaintiff's protected

8   activity and the alleged adverse employment action, and that nine month is "too long to show a

9   causal connection."  (Am. MTD (Doc. No. 33-1) at 8.)  The nine month span defendant refers to

10  appears to be the time between the filing of plaintiff's discrimination complaint in December of

11  2006 and when she was not interviewed for the BOE Office Technician position in September of

12  2007.  However, plaintiff was allegedly first passed over for an Office Technician position in

13  July of 2007, only seven months after she filed her discrimination complaint.  Plaintiff was

14  informed on March 12, 2007 that, with respect to her complaint, "labor relations had closed their

15  file and nothing would be done."  (Sec. Am. Compl. (Doc. No. 28) at 14.)  Plaintiff alleges that

16  she "contacted the EEOC" sometime thereafter and was passed over for the first open BOE

17  Office Technician position in July of 2007, only four months later.  (Id.)

18         Moreover, "a rule that any period over a certain time is per se too long (or,

19  conversely, a rule that any period under a certain time is per se short enough) would be

20  unrealistically simplistic."  Coszalter v. City of Salem, 320 F.3d 968, 978 (9th Cir. 2003).  Under

21  some circumstances a nine-month gap in time may be too great to allow the inference of a causal

22  link.  See Manatt v. Bank of America, NA, 339 F.3d 792, 802 (9th Cir. 2003) (nine-month lapse

23  between protected activity and alleged retaliatory employment decision too long to infer

24  causation); see also Cornwell v. Electra, 439 F.3d 1018, 1035-36 (9th Cir. 2006) (gap of eight

25  months too great to support an inference that complaint was related to termination).  Under other

26  circumstances, however, even a gap of eleven months may not be too great to allow such an

20

1   inference.  See Allen v. Iranon, 283 F.3d 1070, 1078 (9th Cir. 2002) ("[A]n eleven-month gap in

2   time is within the range that has been found to support an inference that an employment decision

3   was retaliatory.").

4            Here, plaintiff has alleged that in December of 2006 she was warned that if she

5   filed a discrimination complaint no one would hire her.  Plaintiff went ahead and filed a

6   discrimination complaint.  Plaintiff continued to inquire about the status of that complaint

7   through March of 2007, when she was told that nothing would be done, and then "contacted the

8   EEOC" sometime thereafter.  (Sec. Am. Compl. (Doc. No. 28) at 14.)  According to plaintiff,

9   four months later she applied for a job for which she was qualified but was passed over for a less

10  qualified applicant.  Under such circumstances plaintiff's allegations, if proven true, may

11  establish a causal link between her protected activity of filing a discrimination complaint and the

12  employment decision to pass her over for the open Office Technician position.  See Yartzoff v.

13  Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (causation was found from proximity alone where

14  the adverse actions occurred within three months after protected activity, two weeks after charge

15  investigated, and less than two months after investigation ended); Marinello v. California Dep't

16  of Corrections & Rehabilitation, No. C 08-00664 JW, 2008 WL 4657775 at *2 (N.D. Cal. Oct.

17  21, 2008) (finding that "under the notice pleading standards, a causal link may be inferred based

18  on the proximity in time" where adverse action occurred within three months of filing complaint

19  with the EEOC).

20           Finally, "[w]hether an adverse employment action is intended to be retaliatory is a

21  question of fact that must be decided in the light of the timing and the surrounding

22  circumstances."  Anthoine v. North Central Counties Consortium, 605 F.3d 740, 751 (9th Cir.

23  2010) (quoting Coszalter, 320 F.3d at 978).  While plaintiff may not ultimately be able to present

24  sufficient facts with respect to this issue, on a motion to dismiss "[t]he issue is not whether a

25  plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

26  the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very remote and

21

1    unlikely but that is not the test." <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (quoting

2    <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).  Here, accepting plaintiff's allegations as true and

3    construing them in the light most favorable to her, the allegations of the second amended

4    complaint are sufficient to state a prima facie case of retaliation under Title VII.

5          For the reasons stated above, defendant's motion to dismiss should be denied with

6    respect to plaintiff's claim that the defendant retaliated against her by failing to hire her for the

7    open BOE Office Technician positions in July of 2007 and September of 2007.[14]

8    II.  <u>State Law Claims</u>

9          Plaintiff generally alleges in her second amended complaint that this action is

10   "authorized and instituted pursuant to . . . the common law of the State of California."  (Sec. Am.

11   Compl. (Doc. No. 28) at 4.)  Plaintiff also alleges that this court may "exercise pendant

12   jurisdiction over plaintiff's state law claims arising under the common law and statutes of the

13   State of California.  (<u>Id.</u> at 5.)  Defendant argues that any potential state law claims against the

14   BOE should be dismissed because this court lacks jurisdiction over those claims.  (Am. MTD

15   (Doc. No. 33-1) at 9.)

16         In general, the Eleventh Amendment bars suits against a state, absent the state's

17   affirmative waiver of its immunity or congressional abrogation of that immunity.  <u>Pennhurst v.</u>

18   <u>Halderman</u>, 465 U.S. 89, 98-99 (1984); <u>Simmons v. Sacramento Cnty Superior Court</u>, 318 F.3d

19   1156, 1161 (9th Cir. 2003); <u>Yakama Indian Nation v. State of Wash. Dep't of Revenue</u>, 176 F.3d

20   1241, 1245 (9th Cir. 1999); <u>see</u> <u>also</u> <u>Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of</u>

21   <u>Higher Educ.</u>, 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against

22   /////

23   /////

24   /////

25    

26   [14]  Having reviewed plaintiff's second amended complaint, the court finds these allegations to be the only allegations therein that state a cognizable claim for retaliation.

1    the State or its agencies for all types of relief, absent unequivocal consent by the state.").[15]

2            To be a valid waiver of sovereign immunity, a state's consent to suit must be

3    "unequivocally expressed in the statutory text." Lane v. Pena, 518 U.S. 187, 192 (1996). See

4    also Pennhurst, 465 U.S. at 99; Yakama Indian Nation, 176 F.3d at 1245. "[T]here can be no

5    consent by implication or by use of ambiguous language." United States v. N.Y. Rayon

6    Importing Co., 329 U.S. 654, 659 (1947). Courts must "indulge every reasonable presumption

7    against waiver," Coll. Sav. Bank v. Florida Prepaid, 527 U.S. 666, 682 (1999), and waivers

8    "must be construed strictly in favor of the sovereign and not enlarged beyond what the [statutory]

9    language requires." United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (citations,

10   ellipses, and internal quotation marks omitted). "To sustain a claim that the Government is liable

11   for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously

12   to such monetary claims." Lane, 518 U.S. at 192.

13           To the extent plaintiff has attempted to allege any violations of state law, such

14   claims may be barred by sovereign immunity. In any event, in her second amended complaint

15   plaintiff has failed to allege that any specific conduct engaged in by defendant BOE violated any

16   provision of state law. Rather, plaintiff has simply alleged that this court may exercise

17   jurisdiction over plaintiff's state law claims without referring to any such specific state law

18   claims. Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair

19   notice to the defendant and must allege facts that support the elements of the claim plainly and

20   succinctly. Jones, 733 F.2d at 649. Because plaintiff has failed to comply with the requirements

21   of Fed. R. Civ. P. 8(a), any unidentified state law claim that she intended to present in her second

22   amended complaint must be dismissed.

23   /////

24

25           [15] The Eleventh Amendment also bars federal suits, whether seeking damages or injunctive relief, against state officials where the state is the real party in interest. Pennhurst, 465 U.S. at 101-02. "Eleventh Amendment immunity also shields state officials from official

26   capacity suits." Krainski, 616 F.3d at 967.

1    Accordingly, defendant's motion to dismiss any state law claims contained in

2   plaintiff's second amended complaint should be granted.

3                        DEFENDANT'S MOTION TO STRIKE

4    Defendant moves pursuant to Federal Rule of Civil Procedure 12(f) to strike

5   plaintiff's claims for declaratory and injunctive relief and for punitive damages, arguing that

6   declaratory and injunctive relief and punitive damages are not forms of relief available to

7   plaintiff in this action.  (Am. MTD (Doc. No. 33-1) at 9-10.)

8    A motion to strike pursuant to Rule 12(f) allows a court to strike "from any

9   pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

10   matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the

11   expenditure of time and money that must arise from litigating spurious issues by dispensing with

12   those issues prior to trial . . . ."  Whittlestone, Inc. v. Handi-Craft, Co., 618 F3d 970, 973 (9th

13   Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other

14   grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 (1994)).  See also Sidney-Vinstein v.

15   A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  A motion to strike is well-taken when "it is

16   clear that the matter to be stricken could have no possible bearing on the subject matter of

17   litigation."  LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992).

18   Impertinent allegations are those that are not responsive or relevant to issues involved in the

19   action and which could not be admitted as evidence in the litigation.  Fantasy, Inc., 984 F.2d at

20   1527.  "Scandalous" within the meaning of Rule 12(f) includes allegations that cast a cruelly

21   derogatory light on a party or other person.  Talbot v. Robert Mathews Distributing Co., 961 F.2d

22   654, 665 (7th Cir. 1992).  Ultimately, whether to grant a motion to strike applying these

23   standards lies within the sound discretion of the district court.  Fantasy, Inc., 984 F.2d at 1527;

24   /////

25   /////

26   /////

1    see also California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F. Supp.2d 1028,

2    1032-33 (C.D. Cal. 2002).[16]

3                 Here, defendant does not allege that plaintiff's claim for injunctive relief or

4    punitive damages is an insufficient defense or is redundant, immaterial, impertinent, or

5    scandalous.  Nor could defendant assert as much.  See Fantasy, Inc., 984 F.2d at 1527

6    ("Immaterial matter is that which has no essential or important relationship to the claim for relief

7    or the defenses being pleaded . . . . Impertinent matter consists of statements that do not pertain,

8    and are not necessary, to the issues in question.").  See also Whittlestone, Inc., 618 F3d at 974

9    (finding that a claim for damages could not be redundant, immaterial, impertinent or scandalous).

10                Defendant merely argues that such forms of relief are precluded as a matter of law

11   and therefore should be stricken from plaintiff's second amended complaint.  Such an argument

12   is better addressed by way of a motion to dismiss brought pursuant to Rule 12(b)(6) or a motion

13   for summary judgment brought pursuant to Rule 56, not by way of a motion to strike pursuant to

14   Rule 12(f).  Yamamoto v. Omiya, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is 'neither an

15   authorized nor a proper way to procure the dismissal of all or a part of a complaint.'") (citing 5A

16   Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 782 (1969));

17   but see Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("The

18   purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of

19   complaints . . . .").  Rule 12(f) does not authorize a district court to strike a claim for relief on the

20   grounds that such relief is precluded as a matter of law.  See Whittlestone, 618 F.3d at 976 ("We

21   /////

22   /////

23   /////

24   ────────────────

25        [16]  Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted.
     Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  A motion to strike should
     therefore not be granted unless it is absolutely clear that the matter to be stricken could have no

26   possible bearing on the litigation.  Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

1  hold that Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to

2  dismiss a claim for damages on the basis it is precluded as a matter of law.").[17]

3          Accordingly, the undersigned will recommend that defendant's motion to strike be

4  denied.[18]

5                         MOTION FOR MORE DEFINITE STATEMENT

6          Defendant also moves pursuant to Federal Rule of Civil Procedure 12(e) for a

7  more definite statement.  (Am. MTD (Doc. No. 33-1) at 10.)  A motion for more definite

8  statement pursuant to Federal Rule of Civil Procedure 12(e) is designed to strike at

9  unintelligibility, rather than want of detail.  See Woods v. Reno Commodities, Inc., 600 F. Supp.

10 574, 580 (D. Nev. 1984); Nelson v. Quimby Island Reclamation Dist, 491 F. Supp. 1364, 1385

11 (N.D. Cal. 1980).  The rule permits a party to move for a more definite statement "[i]f a pleading

12 is so vague that a party cannot reasonably be required to frame a responsive pleading." Fed. R.

13 Civ. P. 12(e).  It is not the function of such a motion to require the pleader to disclose details of

14 the case, see Boxall v. Sequoia Union High Sch. Dist., 464 F. Supp. 1104, 1114 (N.D. Cal.

15 1979), or to provide the evidentiary material that may properly be obtained by discovery, see

16 Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  A motion

17 for more definite statement should be denied if a pleading meets federal standards by providing a

18

19      [17]  Even if the court could grant defendant's motion to strike, particularly in light of
       plaintiff's pro se status the court finds that it is inappropriate to grant defendant's motion to
20     strike at this early stage of the litigation.  See Johnson v. GMRI, Inc., No. CV F 07-0283 LJO
       DLB, 2007 WL 2462101 at *5 (E.D. Cal. Aug. 27, 2007).
21
       [18]  Although for the reasons set forth above the court will recommend that defendant's
22     motion to strike be denied, plaintiff may indeed lack standing to seek injunctive relief from
       which she would not likely benefit.  See Walsh v. Nevada Dept. of Human Resources, 471 F.3d
23     1033, 1037 (9th Cir. 2006).  Moreover, "[i]t is well established that punitive damages may not be
       assessed against a public entity under Title VII."  Hines v. California Public Utilities Com'n, No.
24     C-10-2813 EMC, 2010 WL 4691652 at *8 (E.D. Cal. Nov. 8, 2010) (citing 42 U.S.C. §
       1981a(b)(1)).  See also Barefield v. California State University Bakersfield, No. CIV F 05-0633
25     AWI TAG, 2006 WL 829122 at *7 (E.D. Cal. Mar. 28, 2006) ("[U]nder the terms of Title VII
       itself [42 U.S.C. § 1981a(b)(1)], punitive damages are not recoverable against governmental
26     entities.").

1  "short and plain statement" of the claim showing that the pleader is entitled to relief.  See Fed. R.

2  Civ. P. 8(a)(2).

3  　　　　Upon careful consideration of plaintiff's second amended complaint and the legal

4  standards applicable to Rule 12(e) motions, and in light of the recommendation that all of

5  plaintiff's claims be dismissed except her Title VII claims of discrimination and retaliation in

6  connection with the July 2007 and September 2007 open BOE Office Technician positions, the

7  undersigned finds that plaintiff's second amended complaint is not impermissibly vague or

8  ambiguous with regard to her pro se allegations of discrimination and retaliation noted above.

9  Accordingly, the undersigned will recommend that defendant's motion for more definite

10  statement be denied.

11  　　　　　　　　　　　　　　CONCLUSION

12  　　　　IT IS HEREBY RECOMMENDED that:

13  　　　　1.  Defendant's November 19, 2010 amended motion to dismiss (Doc. No. 33) be

14  denied as to plaintiff's claim that defendant discriminated against her by failing to hire plaintiff

15  for the open BOE Office Technician positions in July of 2007 and September of 2007;

16  　　　　2.  Defendant's November 19, 2010 amended motion to dismiss (Doc. No. 33) be

17  denied with respect to plaintiff's claim that defendant retaliated against her for filing a

18  discrimination complaint by failing to hire plaintiff for the open BOE Office Technician

19  positions in July of 2007 and September of 2007;

20  　　　　3.  Defendant's November 19, 2010 amended motion to dismiss (Doc. No. 33) be

21  granted in all other respect;

22  　　　　4.  Defendant's November 19, 2010 motion to strike (Doc. No. 33) be denied; and

23  　　　　5.  Defendant's November 19, 2010 motion for a more definite statement (Doc.

24  No. 33) be denied.

25  　　　　These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

1  days after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4  shall be served and filed within seven days after service of the objections.  The parties are

5  advised that failure to file objections within the specified time may waive the right to appeal the

6  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7  DATED: August 26, 2011.

8

9

10  _____

    DALE A. DROZD

11  UNITED STATES MAGISTRATE JUDGE

12  DAD:6
    orders.prose/jackson1387.mtd2.f&rs
13

14

15

16

17

18

19

20

21

22

23

24

25

26