1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALICIA B. JACKSON,

11          Plaintiff,                    No. CIV S-09-1387 JAM DAD PS

12          v.

13   BOARD OF EQUALIZATION,               FINDINGS AND RECOMMENDATIONS

14          Defendant.

15   _____/

16          This matter came before the court on September 7, 2012, for hearing of

17   defendant's motion for summary judgment.  Attorney Kristin M. Daily appeared for the moving

18   party.  Plaintiff, proceeding pro se, appeared on her own behalf.  Oral argument was heard, and

19   defendant's motion was taken under submission.

20          For the reasons set forth below, the court will recommend that defendant's motion

21   for summary judgment be granted.

22                           BACKGROUND

23          Plaintiff commenced this action on May 19, 2009, by filing her original complaint

24   and an application to proceed in forma pauperis.  (Doc. Nos. 1 & 2.)  On June 15, 2009, the

25   undersigned granted plaintiff's motion to proceed in forma pauperis and ordered service on

26   defendant Board of Equalization (BOE).  (Doc. No. 3.)  On September 8, 2009, defendant moved

1

1  to dismiss the original complaint.  (Doc. No. 8.)  Plaintiff did not file written opposition to that

2  motion but instead, on October 8, 2009, filed a motion seeking leave of court to file an amended

3  complaint.  (Doc. No. 12.)  On October 9, 2009, the Court granted both defendant's motion to

4  dismiss and plaintiff's motion for leave to file an amended complaint.  That same day plaintiff

5  filed her first amended complaint.  (Doc. No. 14.)  On October 29, 2009, defendant moved to

6  dismiss the first amended complaint.  (Doc. No. 17.)  On September 20, 2010, the court granted

7  defendant's motion to dismiss the first amended complaint and also granted plaintiff leave to file

8  a second amended complaint.  (Doc. No. 27.)

9           On October 26, 2010, plaintiff filed her second amended complaint.  (Doc. No.

10  28.)  On November 19, 2010, defendant moved to dismiss the second amended complaint.  (Doc.

11  No. 33.)  On August 26, 2011, the undersigned issued findings and recommendations,

12  recommending that defendant's motion to dismiss be denied as to plaintiff's claims that

13  defendant discriminated and retaliated against her by failing to hire her for the open BOE Office

14  Technician positions in July of 2007 and September of 2007, but be granted in all other respects.

15  (Doc. No. 38.)  Those findings and recommendations were adopted by the assigned District

16  Judge on September 29, 2011, (Doc. No. 40), and defendant filed an answer to the second

17  amended complaint on October 7, 2011.  (Doc. No. 41.)

18           On August 6, 2012, defendant filed the motion for summary judgment now

19  pending before the court.  (Doc. No. 57.)  Plaintiff filed her opposition on August 27, 2012.[1]

20  (Doc. No. 58.)  Defendant filed its reply on August 30, 2012.  (Doc. No. 59.)

21  /////

22  /////

23  

24        [1]  In its reply, defendant BOE argues that pursuant to Local Rule 230(c), plaintiff's
opposition was to be filed no later than August 24, 2012, was therefore untimely and should not
be considered by the court.  (Doc. No. 59.)  However, in light of the fact that plaintiff is not an

25  electronic filer and thus may be mailing her filings, and the fact that she is proceeding pro se, the
undersigned has nonetheless considered plaintiff's opposition in ruling on the pending motion for

26  summary judgment.

1          FACTUAL ALLEGATIONS

2          In her second amended complaint, plaintiff alleges as follows.[2]  On or about

3  November 22, 2006, defendant California Board of Equalization (BOE) asked employees to

4  volunteer to participate in a yearly holiday committee.[3]  (Sec. Am. Compl. (Doc. No. 28) at 9.[4])

5  Plaintiff signed up to be a committee vice chair and was the only African American holiday

6  committee member.  (Id.)  As part of her role on the holiday committee, plaintiff sought to raise

7  money for a food drive.  (Id.)

8          On December 8, 2006, plaintiff was approached by "CAC board members/co

9  workers," Elizabeth Reedman and Judy Weyhe, who demanded to speak with plaintiff

10  immediately.[5]  (Id. at 10.)  Plaintiff was on the phone with a client and requested that the two co-

11  workers leave her work cubicle.  (Id.)  The two co-workers did not leave but instead began

12  yelling at plaintiff, accusing her of using the food drive for her personal gain and threatening to

13  inform plaintiff's supervisor.  (Id.)  Plaintiff repeated her request that the two leave her cubicle

14  and the two co-workers finally left when plaintiff stood and repeated her request a third time.

15  (Id. at 10-11.)

16          On December 12, 2006, plaintiff completed a BOE absence request form so that

17  she could leave work early to meet with an attorney to discuss the filing of a discrimination

18

19          [2]  As noted above, the only claims remaining in this action are those that plaintiff was discriminated and retaliated against with respect to the open BOE Office Technician positions in
20  July of 2007 and September of 2007.  Plaintiff's second amended complaint, however, is replete with the recounting of allegations involving inconsequential disputes.  Accordingly, the
   undersigned will attempt to recount the factual allegations found in the second amended
21  complaint relevant to the remaining claims in the most clear and concise manner possible.

22          [3]  For every date identified by plaintiff in her second amended complaint she alleges that
   the events allegedly occurred "on or about" the given date.  The court will omit that qualifying
23  phrase from the summary of plaintiff's factual allegations.

24          [4]  Page number citations such as this one are to the page number reflected on the court's
   CM/ECF system and not to page numbers assigned by the parties.
25
26          [5]  According to plaintiff, "CAC is a group of BOE employees who BOE appoints to
   regulate fund raising projects."  (Sec. Am. Compl. (Doc. No. 28) at 6.)

3

complaint.  (Id. at 12.)  Plaintiff met with Hiring Supervisor Susan Sineto to obtain approval for

her leave request.  (Id.)  Sineto had been a BOE employee for more than ten years, was

responsible for hiring plaintiff and, according to plaintiff, had "great ties and influence at BOE."

(Id.)  Upon learning about plaintiff's pending discrimination complaint, Sineto told plaintiff:

> You do want to move up the career ladder here, right?  I know you
> have been talking about what classes you need to take to become a
> Business Tax Representative, well I would not go through with this
> discrimination complaint because if you do no one will hire you,
> you will be labeled a troublemaker.  You know how people talk
> here; you do want to move up don't you.

(Id.)

On January 2, 2007, plaintiff sent an e-mail inquiring about the status of her

discrimination complaint to Dan Tokutomi, Richard Parrott, and Kenneth Lawson.[6]  (Id. at 13.)

On January 3, 2007, plaintiff received an e-mail response from Parrot, stating that Tokutomi

would answer her inquiry.  (Id.)  On January 17, 2007, plaintiff again e-mailed Parrot, Tokutomi

and Lawson inquiring about the status of her discrimination complaint but received no response.

(Id. at 13.)  On January 22, 2007, plaintiff was informed that Lynn Bartolo, the Division Chief,

would eventually answer her complaint.  (Id. at 14.)

On March 12, 2007, plaintiff still had not received an answer to her complaint.

(Id.)  Plaintiff e-mailed Bartolo about the status and was informed by Bartolo that "labor relations

had closed their file and nothing would be done."  (Id.)  Bartolo told plaintiff that she would have

to fill out another discrimination complaint.  (Id.)  Believing she was getting the "run around,"

plaintiff contacted the Equal Employment Opportunity Commission ("EEOC").[7]  (Id.)

---

[6]  Plaintiff does not allege when she filed her discrimination complaint with the BOE.

[7]  Plaintiff's second amended complaint does not allege the date upon which she
contacted the EEOC.  In moving for summary judgment defendant argues, and offers some
evidentiary support, that plaintiff filed her complaint with the EEOC on July 24, 2008, and thus
plaintiff cannot recover for any alleged adverse employment action occurring prior to September
12, 2007 (300 days prior to July 24, 2008).  (MSJ (Doc. No. 57-1) at 9-10.)  In opposing

1    In July of 2007 plaintiff was interviewed for a position as an Office Technician

2    with the BOE but was not hired.  (Id. at 20.)  The person hired for the position was Asian, was

3    the sister of another employee who had worked for Parrot, had previously worked in a bar and

4    had no experience working in the Excise Tax Division.  (Id.)

5    In September of 2007, plaintiff spoke to Richard Parrott about another open

6    position as a BOE Office Technician and Parrott told plaintiff that she would be interviewed for

7    the position.  (Id. at 19.)  Plaintiff, however, was not interviewed and the opening was filled by a

8    Caucasian woman with no previous work experience in the Excise Tax Division.  (Id.)  In this

9    regard, plaintiff alleges that she was "qualified for the Office Technician [position and] she had

10   the knowledge of the Excise Tax Division."  (Id. at 21.)  Moreover, plaintiff "was interviewed

11   and tentatively hired for an Office Technician position with the Dept of Health and [the] Dept of

12   Education."  (Id.)

13   In November of 2007, plaintiff left the BOE for a position with the California

14   Department of Corrections.  (Id. at 23.)

15                       DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

16   I.  Legal Standards

17   Summary judgment is appropriate when it is demonstrated that there exists no

18   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

19   of law.  Fed. R. Civ. P. 56(c).  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

20   Owen v. Local No. 169, 971 F.2d 347, 355 (9th Cir. 1992).

21          A party moving for summary judgment always bears the initial
             responsibility of informing the district court of the basis for its
22           motion, and identifying those portions of "the pleadings,
             depositions, answers to interrogatories, and admissions on file,
23           together with the affidavits, if any," which it believes demonstrate

24   ─────────────────────────

25   defendant's motion, however, plaintiff has provided a copy of a Notice of Charge of
     Discrimination filed with the EEOC on January 24, 2008, but not a copy of the actual complaint
     filed.  Nonetheless, as explained below, defendant's motion for summary judgment should be
26   granted for other reasons and therefore the court need not resolve this disputed issue.

5

1    the absence of a genuine issue of material fact.

2    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

3    "[W]here the nonmoving party will bear the burden of proof at trial on a

4    dispositive issue, a summary judgment motion may properly be made in reliance solely on the

5    'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Celotex Corp.</u>, 477

6    U.S. at 323.  Indeed, summary judgment should be entered, after adequate time for discovery and

7    upon motion, against a party who fails to make a showing sufficient to establish the existence of

8    an element essential to that party's case, and on which that party will bear the burden of proof at

9    trial.  <u>See</u> <u>id.</u> at 322.

10    "[A] complete failure of proof concerning an essential element of the nonmoving

11    party's case necessarily renders all other facts immaterial." <u>Id.</u>  Summary judgment should then

12    be granted, "so long as whatever is before the district court demonstrates that the standard for

13    entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

14    If the moving party meets its initial responsibility, the burden then shifts to the

15    opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u>

16    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

17    establish the existence of this factual dispute, the opposing party may not rely upon the

18    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

19    form of affidavits, and/or admissible discovery material, in support of its contention that the

20    dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n. 11.  The opposing party

21    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

22    of the suit under the governing law.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

23    (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

24    1987).  The opposing party must also demonstrate that the dispute is genuine, i.e., that the

25    evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>Wool</u>

26    <u>v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

1    To establish the existence of a factual dispute, the opposing party need not

2    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

3    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4    trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

5    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

6    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

7    amendments).

8    In resolving the summary judgment motion, the court examines the pleadings,

9    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

12   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

13   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

14   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

15   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

16   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

17   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

18   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

19   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

20   II.  Defendant's Statement of Undisputed Facts and Evidence

21   Defendant's statement of undisputed facts is supported by plaintiff's deposition

22   and declarations signed under penalty of perjury and establishes the following.  Plaintiff was

23   interviewed for a BOE Office Technician position that was open in July of 2007.  Ms. Amber

24   Alvarez, however, was selected to fill the position.  Ms. Alvarez was selected for the position

25   because of her qualifications, her superior interview and the excellent reference given on her

26   /////

1  behalf by her supervisor.  (Def.'s SUDF (Doc. No. 57-5) 14-16.)[8]

2            Prior to being selected for the Office Technician position Ms. Alvarez was an

3  Office Assistant with the Department of Housing & Community Development.  Ms. Alvarez

4  duties in that position included dealing with difficult and confused callers, copying, filing and

5  organizing reports, maintaining the department's web page, directing questions and comments to

6  the appropriate persons, and working the main reception counter.  Richard Parrott deemed each

7  of these qualities to be of great value to the open BOE Office Technician position.  Morever, Ms.

8  Alvarez was in rank 3 on the promotional list.[9]  (Def.'s SUDF (Doc. No. 57-5) 17-23.)

9            Plaintiff was not interviewed for the BOE Office Technician position in

10  September of 2007.  That vacancy was filled by a mandatory reinstatement rather than through

11  the regular recruitment process.  In this regard, the Division was informed that the position would

12  be filled by a former employee who was returning to the BOE with mandatory return rights from

13  an assignment to another agency.  Accordingly, applications were not accepted for the September

14  2007 Office Technician position and no one was interviewed for that position.  (Def.'s SUDF

15  (Doc. No. 57-5) 24-29.)

16  III.  Plaintiff's Opposition

17            Plaintiff's opposition does not comply with Local Rule 260(b).  That rule requires

18  a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's

19  statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the

20  party opposing summary judgment is also required to cite evidence in support of each denial.  In

21  the absence of the required admissions and denials, the court has reviewed plaintiff's filing in an

22  effort to discern whether plaintiff denies any fact asserted in defendant's statements of

23

24       [8]  Citations to defendant's Statement of Undisputed Facts are to the specific numbered
undisputed fact asserted.

25       [9]  Plaintiff's second amended complaint alleges that "[t]o get picked up by a state agency
you have to be in the top three testing ranks on the hiring list."  (Sec. Am. Compl. (Doc. No. 28)
26  at 22.)

8

1  undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate the

2  existence of a disputed issue of material fact with respect to any of her claims.

3           Below, the Court will address each of plaintiff's Title VII claims in light of the

4  evidence submitted by the parties in connection with defendant's pending motion for summary

5  judgment and the legal standards set forth above.

6                                        ANALYSIS

7  I.  Title VII

8           Title VII makes it unlawful for an employer to "discriminate against any

9  individual with respect to [her] compensation, term, conditions, or privileges of employment,

10  because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).

11           1)  Discrimination

12           It is well-settled that Title VII is concerned not only with intentional

13  discrimination, but also with employment practices and policies that lead to disparities in the

14  treatment of classes of workers.  See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-31

15  (1971); Connecticut v. Teal, 457 U.S. 440, 446 (1982)  Thus, a plaintiff alleging discrimination

16  under Title VII may proceed under two theories:  disparate treatment or disparate impact.  Ricci

17  v. DeStefano, 557 U.S. 557, 577 (2009); Watson v. Fort Worth Bank & Trust, 487 U.S. 977,

18  986-87 (1988); The Committee Concerning Community Improvement v. City of Modesto, 583

19  F.3d 690, 711 (9th Cir. 2009).  A person is discriminated against through disparate treatment

20  "when he or she is singled out and treated less favorably than others similarly situated on account

21  of race."[10]  McGinest v. GTE Service Corp., 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting

22  Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)).  See also Cornell v. Electra

23  Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

24  _____

25           [10]  In findings and recommendations filed August 26, 2011, the undersigned previously
    found that plaintiff's second amended complaint failed to allege any facts that would suggest a
    disparate impact claim.  (Doc. No. 38 at 9.)  Those findings and recommendations were adopted

26  by the assigned District Judge on September 29, 2011.  (Doc. No. 40.)

1    A plaintiff in a disparate treatment case bears the burden of alleging and proving

2 that the defendant employer intentionally discriminated against her.  Texas Dep't of Community

3 Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGinest, 360 F.3d at 1122.  A plaintiff must,

4 therefore, allege and prove discriminatory motive on the part of the defendant.  International

5 Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Pejic v. Hughes

6 Helicopter, Inc., 840 F.2d 667, 672 (9th Cir. 1988).  A plaintiff may prove intent through either

7 "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than

8 not motivated the employer."  Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007).  See also

9 Pejic, 840 F.2d at 672.  An example of direct evidence of such intent is an employer's use of a

10 racial slur or epithet.  Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1141 (9th Cir. 2006);

11 Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006).  In this case,

12 plaintiff has not come forward with any direct evidence of discriminatory intent on the part of

13 defendant BOE.

14    Alternatively, a plaintiff may rely on the familiar McDonnell Douglas burden

15 shifting framework to prove discriminatory intent.  McDonnell Douglas Corp. v. Green, 411 U.S.

16 792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008).

> 17,18,19,20,21    The analysis has three steps.  The employee must first establish a
> prima facie case of discrimination.  If [she] does, the employer
> must articulate a legitimate, nondiscriminatory reason for the
> challenged action.  Finally, if the employer satisfies this burden,
> the employee must show that the reason is pretextual either directly
> by persuading the court that a discriminatory reason more likely
> motivated the employer or indirectly by showing that the
> employer's proffered explanation is unworthy of credence.

22 Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (internal citation and quotation

23 omitted).  The elements of a prima facie disparate treatment claim under Title VII are:  (1)

24 membership of the plaintiff in a protected class; (2) satisfaction by the plaintiff of the

25 qualifications for the position in issue; (3) an adverse employee action; and (4) more favorable

26 treatment of similarly situated individuals outside the plaintiff's protected class.  Id. at 1089.

1    Here, defendant does not dispute that plaintiff is a member of a protected class,

2    nor does defendant dispute that plaintiff satisfied the qualifications of her position.  Moreover, it

3    is at a minimum in dispute whether plaintiff suffered an adverse employee action.[11]

4    With respect to the fourth element of a prima facie disparate treatment claim,

5    however, plaintiff must present evidence that "'similarly situated individuals outside [her]

6    protected class were treated more favorably, or other circumstances surrounding the adverse

7    employment action give rise to an inference of discrimination.'"  <u>Hawn v. Executive Jet</u>

8    <u>Management, Inc.</u>, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting <u>Peterson v. Hewlett-Packard</u>

9    <u>Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004)).  <u>See also</u> <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889

10   (9th Cir. 1994).  Plaintiff's evidence in support of this element need only be "minimal."  <u>See</u>

11   <u>Coghlan v. American Seafoods Co. LLC.</u>, 413 F.3d 1090, 1094 (9th Cir. 2005).

12   If a plaintiff establishes a prima facie case, "'[t]he burden of production, but not

13   persuasion, . . . shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason

14   for the challenged action.'"  <u>Hawn</u>, 615 F.3d at 1155 (9th Cir. 2010) (quoting <u>Chuang v.</u>

15   <u>University of California</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000)).  <u>See also</u> <u>Metoyer</u>, 504 F.3d at

16   931 n.6 (noting that if plaintiff establishes a prima facie case, the burden then shifts to defendant

17   to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct).

18   Defendant's burden "is one of production, not persuasion, thereby involving no credibility

19   assessment."  <u>Lindsey v. SLT Los Angeles, LLC</u>, 447 F.3d 1138, 1147-48 (9th Cir. 2006).  If the

20   defendant "articulates a legitimate reason for its action, 'the presumption of discrimination drops

21   out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual

22   standard of proof required . . . under Fed. R. Civ. P. 56(c).'"  <u>Metoyer</u>, 504 F.3d at 931 n.6

23

24       [11]  In this regard, defendant contends that employment as an Office Technician would
have been a lateral transfer from plaintiff's Tax Technician position.  Plaintiff, however,
contends that the Office Technician position had a higher maximum salary than her Tax

25   Technician position.  "An adverse employee action is one that materially affects the
'compensation, terms, conditions or privileges of employment.'"  42 U.S.C. § 2000e-2(a)(1);

26   <u>Chuang v. University of California</u>, 225 F.3d 1115, 1125-26 (9th Cir. 2000).

1    (quoting Cornwell, 439 F.3d at 1028).

2          Here, with respect to the filling of the Office Technician position in September

3    2007, plaintiff has offered no evidence that similarly situated individuals outside her protected

4    class were treated more favorably, nor has she come forward with evidence of any other

5    circumstances surrounding the decision not to hire her for that position which would give rise to

6    an inference of discrimination.  In this regard, plaintiff's opposition fails to even address

7    defendant's evidence establishing that in fact no one was considered for the Office Technician

8    position in September 2007 because the position was being filled by a returning employee with

9    mandatory return rights.[12]

10         Moreover, assuming without deciding that plaintiff has established a prima facie

11   disparate treatment claim with respect to defendant's failure to hire her for the Office Technician

12   position in July 2007, the undersigned finds that defendant has articulated, and produced

13   evidence of, a legitimate nondiscriminatory reasons for failing to hire plaintiff for that position.

14   In this regard, defendant has provided the sworn declaration of Richard Parrott, the Administrator

15   over the Excise Tax Division in 2007, who selected Ms. Alvarez for the open Office Technician

16   position.  (Parrott Decl. (Doc. No. 57-3) at 1-2.)  According to Mr. Parrott's declaration, in July

17   of 2007 there was an Office Technician position available in the Excise Tax Division.  The

18   person hired for that position would serve as Mr. Parrott's division attendance coordinator and

19   clerical support person.  Mr. Parrott received twenty applications for the position and selected six

20   applicants to be interviewed, including plaintiff and Ms. Alvarez.  (Id. at 3.)

21   /////

22

23         [12]  The fact that no one was considered for the Office Technician position in September
     2007 because the position was being filled by a returning employee with mandatory return rights
24   would also constitute a legitimate, nondiscriminatory reason for defendant's employment
     decision.  See Pronechen v. Secretary of U.S. Dept. of Homeland Sec., No. ED-CV-1726-LEW,
25   2010 WL 1526316, at *2 (E.D. Cal. Apr. 15, 2010) ("Defendant successfully meets its burden
     shifting standard by articulating a 'legitimate, nondiscriminatory' reason for not hiring Plaintiff,
26   the hiring freeze.").

1    As noted above, the evidence before the court establishes that Ms. Alvarez was an

2  Office Assistant with the Department of Housing & Community Development where she dealt

3  with difficult and confused callers, and worked on various projects copying, filing and organizing

4  reports.  She also organized and maintained the department's web page and directed questions

5  and comments to the correct persons.  Mr. Parrott interviewed both plaintiff and Ms. Alvarez for

6  the position but ultimately selected Ms. Alvarez based upon her application, her interview and

7  the recommendation of Clayton Hass, who supervised Ms. Alvarez at the Department of Housing

8  & Community Development.  Moreover, at the time of her selection, Ms. Alvarez was hired from

9  the Office Technician promotional list, "in rank 3."[13]  (Id.)

10    Based on the evidence produced by defendant the undersigned finds that

11  defendant BOE has met its burden and has articulated a legitimate, nondiscriminatory reason for

12  its employment decision.  See Noyes v. Kelly Services, 488 F.3d 1163, 1169 (9th Cir. 2007); see

13  also Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir. 1981) ("An employer's decision

14  may be justified by the hired employee's superior qualifications unless the purported justification

15  is a pretext for invidious discrimination."); Ortega v. Regents of University of California, No. C

16  11-4031 PSG, 2012 WL 5988638, at *5 (N.D. Cal. Nov. 29, 2012) ("The Ninth Circuit has held

17  that good interpersonal and communication skills may be valid, nondiscriminatory reasons for

18  hiring or promotion."); Finley v. County of Martin, No. C-07-5922 EMC, 2009 WL 5062326, at

19  *4 (N.D. Cal. Dec. 23, 2009) (finding declarations from members of selection panel stating that

20  they believed employee hired was better candidate than plaintiff based on nonracial

21  considerations constituted articulated nondiscriminatory reason backed up with evidentiary

22  support); Gardias v. California State University, No. C07-06242 HRL, 2009 WL 3009745, at *9

23  (N.D. Cal. Sept. 17, 2009) (finding defendant articulated a legitimate, nondiscriminatory reason

24

25    [13]    Indeed, in her second amended complaint plaintiff alleges that "[t]o get picked up by
a state agency you have to be in the top three testing ranks on the hiring list" and that plaintiff
26  "was in the top three ranking" for the BOE Office Technician list.  (Sec. Am. Compl. (Doc. No.
28) at 22.)

1   for its decision based on Director's conclusion that employee hired had requisite technical and

2   operational expertise, and good interpersonal and communication skills); cf. Grant v. Tosco

3   Refining Co., Inc., No. C95-3224 FMS, 1996 WL 590587, at *5 (N.D. Cal. Oct. 8, 1996)

4   ("Defendant asserts that its reason for not hiring plaintiff on both occasions was that plaintiff

5   failed to meet Tosco's requirements of interpersonal or professional skills for both the October

6   1992 and February 1993 job openings.  The Court finds that this is a legitimate,

7   nondiscriminatory reason within the meaning of the Supreme Court's burden-shifting analysis.").

8          Because defendant has articulated a legitimate, nondiscriminatory reason for the

9   challenged action, plaintiff must "raise a triable issue of material fact as to whether the

10  defendant's proffered reasons . . . are mere pretext for unlawful discrimination." Hawn, 615 F.3d

11  at 1155-56.  See also Noyes, 488 F.3d at 1168 ("Should the defendant carry its burden, the

12  burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's

13  proffered reason was a pretext for unlawful discrimination.").  "'[A] plaintiff can prove pretext in

14  two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of

15  credence because it is internally inconsistent or otherwise not believable, or (2) directly, by

16  showing that unlawful discrimination more likely motivated the employer.'" Noyes, 488 F.3d at

17  1170 (quoting Chuang, 225 F.3d at 1127).

18         Direct evidence is evidence "which, if believed, proves the fact [of discriminatory

19  animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221

20  (9th Cir. 1998) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994))

21  (alteration in original).  Direct evidence typically consists of clearly sexist, racist, or similarly

22  discriminatory statements or actions by the employer.  See, e.g., Godwin, 150 F.3d at 1221

23  (supervisor stated he "did not want to deal with [a] female"); Cordova v. State Farm Ins., 124

24  F.3d 1145, 1149 (9th Cir. 1997) (alleged derogatory comments constitute direct evidence).

25         "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must

26  produce 'specific' and 'substantial' facts to create a triable issue of pretext." Earl v. Nielsen

14

1   Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting Godwin, 150 F.3d at

2   1222).[14]  "[T]hat requirement is tempered by our observation that, in the context of Title VII

3   claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous

4   one.'"  Noyes, 488 F.3d at 1170 (quoting Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir.

5   1997)).  Nonetheless, a "plaintiff cannot create a genuine issue of pretext to survive a motion for

6   summary judgment by relying solely on unsupported speculations and allegations of

7   discriminatory intent."  Crawford v. MCI Worldcom Communications, Inc., 167 F. Supp.2d

8   1128, 1135 (S.D. Cal. 2001).  Moreover, "[m]erely denying the credibility of the employer's

9   proffered reasons is insufficient to withstand summary judgment."  Munoz v. Mabus, 630 F.3d

10  856, 865 (9th Cir. 2010).

11          The undersigned has reviewed all of plaintiff's filings and finds that she has failed

12  to offer either direct or circumstantial evidence that defendant's proffered reasons for the

13  challenged employment actions taken here are a mere pretext for unlawful discrimination.

14  Plaintiff has therefore failed to raise a triable issue of material fact necessitating a trial as to this

15  claim.

16          Plaintiff argues in her opposition that she had to submit three references "in order

17  to secure a state job" while Ms. Alvarez was hired because she had one good reference.  (Pl.'s

18  Opp.'n (Doc. No. 58) at 7.)  Mr. Parrott's declaration, however, does not specifically address

19  how many references Ms. Alvarez submitted, but does state that Ms. Alvarez was hired, in part,

20  because of a good reference, specifically the detailed recommendation given by Clayton Hass,

21  who supervised Ms. Alvarez at the Department of Housing & Community Development, to Mr.

22  Parrott during their conversation.  (Parrott Decl. (Doc. No. 57-3) at 3.)

23

24      [14]  But see Davis v. Team Electric Co., 520 F.3d 1080, 1091 & n.6 (9th Cir. 2008) (noting
    that whether a plaintiff must offer "specific" and substantial" circumstantial evidence of pretext,
25  or some lesser evidence, to defeat summary judgment is a question not clearly resolved in the
    Ninth Circuit); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029-31 (9th Cir. 2006)
26  (questioning the continued viability of the holding in Godwin after the Supreme Court's decision
    in Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)).

1    Plaintiff also argues that Ms. Alvarez had her sister, Serene Takahashi, who

2  previously worked for Mr. Parrott, submit her application to Mr. Parrot personally so that Mr.

3  Parrot would be aware that Ms. Alvarez was Serene Takashi's sister and was Asian, and would

4  therefore show preferential treatment towards Ms. Alvarez.  (Pl.'s Opp.'n (Doc. No. 58) at 7.)

5  Plaintiff also disputes in conclusory fashion the contention that Ms. Alvarez was last employed

6  by the Department of Community and Housing and claims that Ms. Alvarez was instead working

7  at a bar.  (Id.)

8    These assertions, however, are merely unsupported speculation and general

9  allegations of discriminatory intent which fail to establish pretext on the part of defendant BOE

10  either directly or indirectly.  Accordingly, defendant's motion for summary judgment as to

11  plaintiff's discrimination claim should be granted.

12    2)  Retaliation

13    Title VII also prohibits retaliation by an employer "against an employee for

14  making a charge or otherwise participating in a Title VII proceeding."  Nilsson v. City of Mesa,

15  503 F.3d 947, 953 (9th Cir. 2007).  Under § 704 of the Civil Rights Act of 1964, it is unlawful

16  
17  
18  
19  

> for an employer to discriminate against any of his employees . . .
> because [the employee] has opposed any practice made an
> unlawful employment practice by [Title VII], or because [the
> employee] has made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing under [Title
> VII].

20  42 U.S.C. § 2000e-3 (2000).  "To establish a claim of retaliation, a plaintiff must prove that (1)

21  the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment

22  action, and (3) there was a causal link between the plaintiff's protected activity and the adverse

23  employment action."  Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007).  See also

24  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).

25    As to the first element of the prima facie case, an employee's formal or informal

26  complaint regarding unlawful employment practices is "protected activity," and a plaintiff need

1    only show that her belief that an unlawful employment practice occurred was "reasonable."  See

2    Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000);

3    Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994).  As to the second element, for purposes of a

4    retaliation claim a challenged action must be "materially adverse," which means that it would

5    dissuade a reasonable worker from exercising protected rights.  See Burlington N. & Santa Fe

6    Ry. Co. v. White, 548 U.S. 53, 68 (2006).  As to the third element, a plaintiff may establish a

7    causal link between the protected activity engaged in and the adverse action taken by

8    circumstantial evidence, including the employer's knowledge of the protected activity and a

9    proximity in time between the protected action and the adverse employment act.  Jordan v. Clark,

10   847 F.2d 1368, 1376 (9th Cir. 1988).  See also Passantino, 212 F.3d at 507 ("[W]hen adverse

11   decisions are taken within a reasonable period of time after complaints of discrimination have

12   been made, retaliatory intent may be inferred.").

13        "If the plaintiff establishes a prima facie case, the burden then shifts to the

14   defendant to articulate 'a legitimate, nondiscriminatory reason for the adverse employment

15   action.'"  Sanders v. City of Newport,  657 F.3d 772, 777 n.3 (9th Cir. 2011) (quoting Fonseca v.

16   Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 849 (9th Cir. 2004.  If the employer articulates a

17   legitimate reason for its action, the plaintiff must then show that the reason given is pretextual.

18   See Pottenger v. Potlatch Corp., 329 F.3d 740, 746 (9th Cir. 2003).

19        Here, with respect to the filling of the Office Technician position in September

20   2007, there is no evidence that the failure to hire plaintiff for that position was a "materially

21   adverse" action that would dissuade a reasonable worker from exercising protected rights.  In this

22   regard, defendant's evidence establishes that plaintiff was not singled out because she had

23   previously filed a complaint alleging discrimination, but was instead treated the same as every

24   other BOE employee in being denied consideration for the position because it was being filled by

25   a returning employee with mandatory return rights.  Moreover, for the reasons stated above, with

26   respect to the filling of both the Office Technician positions in July 2007 and September 2007,

17

1  defendant has articulated, and offered evidence of, legitimate, nondiscriminatory reasons for the

2  challenged actions and plaintiff has failed to come forward with any evidence demonstrating or

3  even suggesting that those reasons are pretextual.  Accordingly, defendant's motion for summary

4  judgment as to plaintiff's retaliation claim should also be granted.

5                                          CONCLUSION

6            Accordingly, IT IS HEREBY RECOMMENDED that:

7            1.  Defendant's August 6, 2012 motion for summary judgment (Doc. No. 57) be

8  granted; and

9            2.  This action be dismissed.

10           These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within seven days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: January 29, 2013.

19

20  _____

21  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE
22

23  DAD:6
    Ddad1\orders.pro se\jackson1387.msj.f&rs
24

25

26

18