IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALICIA B. JACKSON,

      Plaintiff,　　　　　　　　　　No. CIV S-09-1387 JAM DAD PS

     v.

BOARD OF EQUALIZATION,　　　　　　FINDINGS AND RECOMMENDATIONS

      Defendant.

_____/

      This matter came before the court on September 7, 2012, for hearing of defendant's motion for summary judgment. Attorney Kristin M. Daily appeared for the moving party. Plaintiff, proceeding pro se, appeared on her own behalf. Oral argument was heard, and defendant's motion was taken under submission.

      For the reasons set forth below, the court will recommend that defendant's motion for summary judgment be granted.

BACKGROUND

      Plaintiff commenced this action on May 19, 2009, by filing her original complaint and an application to proceed in forma pauperis. (Doc. Nos. 1 & 2.) On June 15, 2009, the undersigned granted plaintiff's motion to proceed in forma pauperis and ordered service on defendant Board of Equalization (BOE). (Doc. No. 3.) On September 8, 2009, defendant moved

1

to dismiss the original complaint. (Doc. No. 8.) Plaintiff did not file written opposition to that motion but instead, on October 8, 2009, filed a motion seeking leave of court to file an amended complaint. (Doc. No. 12.) On October 9, 2009, the Court granted both defendant's motion to dismiss and plaintiff's motion for leave to file an amended complaint. That same day plaintiff filed her first amended complaint. (Doc. No. 14.) On October 29, 2009, defendant moved to dismiss the first amended complaint. (Doc. No. 17.) On September 20, 2010, the court granted defendant's motion to dismiss the first amended complaint and also granted plaintiff leave to file a second amended complaint. (Doc. No. 27.)

On October 26, 2010, plaintiff filed her second amended complaint. (Doc. No. 28.) On November 19, 2010, defendant moved to dismiss the second amended complaint. (Doc. No. 33.) On August 26, 2011, the undersigned issued findings and recommendations, recommending that defendant's motion to dismiss be denied as to plaintiff's claims that defendant discriminated and retaliated against her by failing to hire her for the open BOE Office Technician positions in July of 2007 and September of 2007, but be granted in all other respects. (Doc. No. 38.) Those findings and recommendations were adopted by the assigned District Judge on September 29, 2011, (Doc. No. 40), and defendant filed an answer to the second amended complaint on October 7, 2011. (Doc. No. 41.)

On August 6, 2012, defendant filed the motion for summary judgment now pending before the court. (Doc. No. 57.) Plaintiff filed her opposition on August 27, 2012.[1] (Doc. No. 58.) Defendant filed its reply on August 30, 2012. (Doc. No. 59.)

/////

/////

---

[1] In its reply, defendant BOE argues that pursuant to Local Rule 230(c), plaintiff's opposition was to be filed no later than August 24, 2012, was therefore untimely and should not be considered by the court. (Doc. No. 59.) However, in light of the fact that plaintiff is not an electronic filer and thus may be mailing her filings, and the fact that she is proceeding pro se, the undersigned has nonetheless considered plaintiff's opposition in ruling on the pending motion for summary judgment.

FACTUAL ALLEGATIONS

In her second amended complaint, plaintiff alleges as follows.[2] On or about November 22, 2006, defendant California Board of Equalization (BOE) asked employees to volunteer to participate in a yearly holiday committee.[3] (Sec. Am. Compl. (Doc. No. 28) at 9.[4]) Plaintiff signed up to be a committee vice chair and was the only African American holiday committee member. (Id.) As part of her role on the holiday committee, plaintiff sought to raise money for a food drive. (Id.)

On December 8, 2006, plaintiff was approached by "CAC board members/co workers," Elizabeth Reedman and Judy Weyhe, who demanded to speak with plaintiff immediately.[5] (Id. at 10.) Plaintiff was on the phone with a client and requested that the two co-workers leave her work cubicle. (Id.) The two co-workers did not leave but instead began yelling at plaintiff, accusing her of using the food drive for her personal gain and threatening to inform plaintiff's supervisor. (Id.) Plaintiff repeated her request that the two leave her cubicle and the two co-workers finally left when plaintiff stood and repeated her request a third time. (Id. at 10-11.)

On December 12, 2006, plaintiff completed a BOE absence request form so that she could leave work early to meet with an attorney to discuss the filing of a discrimination

---

[2] As noted above, the only claims remaining in this action are those that plaintiff was discriminated and retaliated against with respect to the open BOE Office Technician positions in July of 2007 and September of 2007. Plaintiff's second amended complaint, however, is replete with the recounting of allegations involving inconsequential disputes. Accordingly, the undersigned will attempt to recount the factual allegations found in the second amended complaint relevant to the remaining claims in the most clear and concise manner possible.

[3] For every date identified by plaintiff in her second amended complaint she alleges that the events allegedly occurred "on or about" the given date. The court will omit that qualifying phrase from the summary of plaintiff's factual allegations.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[5] According to plaintiff, "CAC is a group of BOE employees who BOE appoints to regulate fund raising projects." (Sec. Am. Compl. (Doc. No. 28) at 6.)

3

complaint. (Id. at 12.) Plaintiff met with Hiring Supervisor Susan Sineto to obtain approval for her leave request. (Id.) Sineto had been a BOE employee for more than ten years, was responsible for hiring plaintiff and, according to plaintiff, had "great ties and influence at BOE." (Id.) Upon learning about plaintiff's pending discrimination complaint, Sineto told plaintiff:

> You do want to move up the career ladder here, right? I know you have been talking about what classes you need to take to become a Business Tax Representative, well I would not go through with this discrimination complaint because if you do no one will hire you, you will be labeled a troublemaker. You know how people talk here; you do want to move up don't you.

(Id.)

On January 2, 2007, plaintiff sent an e-mail inquiring about the status of her discrimination complaint to Dan Tokutomi, Richard Parrott, and Kenneth Lawson.[6] (Id. at 13.) On January 3, 2007, plaintiff received an e-mail response from Parrot, stating that Tokutomi would answer her inquiry. (Id.) On January 17, 2007, plaintiff again e-mailed Parrot, Tokutomi and Lawson inquiring about the status of her discrimination complaint but received no response. (Id. at 13.) On January 22, 2007, plaintiff was informed that Lynn Bartolo, the Division Chief, would eventually answer her complaint. (Id. at 14.)

On March 12, 2007, plaintiff still had not received an answer to her complaint. (Id.) Plaintiff e-mailed Bartolo about the status and was informed by Bartolo that "labor relations had closed their file and nothing would be done." (Id.) Bartolo told plaintiff that she would have to fill out another discrimination complaint. (Id.) Believing she was getting the "run around," plaintiff contacted the Equal Employment Opportunity Commission ("EEOC").[7] (Id.)

---

[6] Plaintiff does not allege when she filed her discrimination complaint with the BOE.

[7] Plaintiff's second amended complaint does not allege the date upon which she contacted the EEOC. In moving for summary judgment defendant argues, and offers some evidentiary support, that plaintiff filed her complaint with the EEOC on July 24, 2008, and thus plaintiff cannot recover for any alleged adverse employment action occurring prior to September 12, 2007 (300 days prior to July 24, 2008). (MSJ (Doc. No. 57-1) at 9-10.) In opposing

4

In July of 2007 plaintiff was interviewed for a position as an Office Technician with the BOE but was not hired. (Id. at 20.) The person hired for the position was Asian, was the sister of another employee who had worked for Parrot, had previously worked in a bar and had no experience working in the Excise Tax Division. (Id.)

In September of 2007, plaintiff spoke to Richard Parrott about another open position as a BOE Office Technician and Parrott told plaintiff that she would be interviewed for the position. (Id. at 19.) Plaintiff, however, was not interviewed and the opening was filled by a Caucasian woman with no previous work experience in the Excise Tax Division. (Id.) In this regard, plaintiff alleges that she was "qualified for the Office Technician [position and] she had the knowledge of the Excise Tax Division." (Id. at 21.) Moreover, plaintiff "was interviewed and tentatively hired for an Office Technician position with the Dept of Health and [the] Dept of Education." (Id.)

In November of 2007, plaintiff left the BOE for a position with the California Department of Corrections. (Id. at 23.)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I. <u>Legal Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Owen v. Local No. 169</u>, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate

---

defendant's motion, however, plaintiff has provided a copy of a Notice of Charge of Discrimination filed with the EEOC on January 24, 2008, but not a copy of the actual complaint filed. Nonetheless, as explained below, defendant's motion for summary judgment should be granted for other reasons and therefore the court need not resolve this disputed issue.

the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should then be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by plaintiff's deposition and declarations signed under penalty of perjury and establishes the following. Plaintiff was interviewed for a BOE Office Technician position that was open in July of 2007. Ms. Amber Alvarez, however, was selected to fill the position. Ms. Alvarez was selected for the position because of her qualifications, her superior interview and the excellent reference given on her

/////

behalf by her supervisor.  (Def.'s SUDF (Doc. No. 57-5) 14-16.)[8]

Prior to being selected for the Office Technician position Ms. Alvarez was an Office Assistant with the Department of Housing & Community Development.  Ms. Alvarez duties in that position included dealing with difficult and confused callers, copying, filing and organizing reports, maintaining the department's web page, directing questions and comments to the appropriate persons, and working the main reception counter.  Richard Parrott deemed each of these qualities to be of great value to the open BOE Office Technician position.  Morever, Ms. Alvarez was in rank 3 on the promotional list.[9]  (Def.'s SUDF (Doc. No. 57-5) 17-23.)

Plaintiff was not interviewed for the BOE Office Technician position in September of 2007.  That vacancy was filled by a mandatory reinstatement rather than through the regular recruitment process.  In this regard, the Division was informed that the position would be filled by a former employee who was returning to the BOE with mandatory return rights from an assignment to another agency.  Accordingly, applications were not accepted for the September 2007 Office Technician position and no one was interviewed for that position.  (Def.'s SUDF (Doc. No. 57-5) 24-29.)

III. Plaintiff's Opposition

Plaintiff's opposition does not comply with Local Rule 260(b).  That rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial.  In the absence of the required admissions and denials, the court has reviewed plaintiff's filing in an effort to discern whether plaintiff denies any fact asserted in defendant's statements of

---

[8] Citations to defendant's Statement of Undisputed Facts are to the specific numbered undisputed fact asserted.

[9] Plaintiff's second amended complaint alleges that "[t]o get picked up by a state agency you have to be in the top three testing ranks on the hiring list." (Sec. Am. Compl. (Doc. No. 28) at 22.)

undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate the existence of a disputed issue of material fact with respect to any of her claims.

Below, the Court will address each of plaintiff's Title VII claims in light of the evidence submitted by the parties in connection with defendant's pending motion for summary judgment and the legal standards set forth above.

## ANALYSIS

I. Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, term, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).

### 1) Discrimination

It is well-settled that Title VII is concerned not only with intentional discrimination, but also with employment practices and policies that lead to disparities in the treatment of classes of workers.  See, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-31 (1971); Connecticut v. Teal, 457 U.S. 440, 446 (1982)  Thus, a plaintiff alleging discrimination under Title VII may proceed under two theories:  disparate treatment or disparate impact.  Ricci v. DeStefano, 557 U.S. 557, 577 (2009); Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87 (1988); The Committee Concerning Community Improvement v. City of Modesto, 583 F.3d 690, 711 (9th Cir. 2009).  A person is discriminated against through disparate treatment "when he or she is singled out and treated less favorably than others similarly situated on account of race."[10]  McGinest v. GTE Service Corp., 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)).  See also Cornell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

---

[10] In findings and recommendations filed August 26, 2011, the undersigned previously found that plaintiff's second amended complaint failed to allege any facts that would suggest a disparate impact claim. (Doc. No. 38 at 9.) Those findings and recommendations were adopted by the assigned District Judge on September 29, 2011. (Doc. No. 40.)

9

A plaintiff in a disparate treatment case bears the burden of alleging and proving that the defendant employer intentionally discriminated against her. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGinest, 360 F.3d at 1122. A plaintiff must, therefore, allege and prove discriminatory motive on the part of the defendant. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Pejic v. Hughes Helicopter, Inc., 840 F.2d 667, 672 (9th Cir. 1988). A plaintiff may prove intent through either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007). See also Pejic, 840 F.2d at 672. An example of direct evidence of such intent is an employer's use of a racial slur or epithet. Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1141 (9th Cir. 2006); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.7 (9th Cir. 2006). In this case, plaintiff has not come forward with any direct evidence of discriminatory intent on the part of defendant BOE.

Alternatively, a plaintiff may rely on the familiar McDonnell Douglas burden shifting framework to prove discriminatory intent. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008).

> The analysis has three steps. The employee must first establish a prima facie case of discrimination. If [she] does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (internal citation and quotation omitted). The elements of a prima facie disparate treatment claim under Title VII are: (1) membership of the plaintiff in a protected class; (2) satisfaction by the plaintiff of the qualifications for the position in issue; (3) an adverse employee action; and (4) more favorable treatment of similarly situated individuals outside the plaintiff's protected class. Id. at 1089.

10

Here, defendant does not dispute that plaintiff is a member of a protected class, nor does defendant dispute that plaintiff satisfied the qualifications of her position.  Moreover, it is at a minimum in dispute whether plaintiff suffered an adverse employee action.[11]

With respect to the fourth element of a prima facie disparate treatment claim, however, plaintiff must present evidence that "'similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004)). See also Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  Plaintiff's evidence in support of this element need only be "minimal." See Coghlan v. American Seafoods Co. LLC., 413 F.3d 1090, 1094 (9th Cir. 2005).

If a plaintiff establishes a prima facie case, "'[t]he burden of production, but not persuasion, . . . shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action.'" Hawn, 615 F.3d at 1155 (9th Cir. 2010) (quoting Chuang v. University of California, 225 F.3d 1115, 1123-24 (9th Cir. 2000)). See also Metoyer, 504 F.3d at 931 n.6 (noting that if plaintiff establishes a prima facie case, the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct). Defendant's burden "is one of production, not persuasion, thereby involving no credibility assessment." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1147-48 (9th Cir. 2006).  If the defendant "articulates a legitimate reason for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required . . . under Fed. R. Civ. P. 56(c).'" Metoyer, 504 F.3d at 931 n.6

---

[11] In this regard, defendant contends that employment as an Office Technician would have been a lateral transfer from plaintiff's Tax Technician position.  Plaintiff, however, contends that the Office Technician position had a higher maximum salary than her Tax Technician position.  "An adverse employee action is one that materially affects the 'compensation, terms, conditions or privileges of employment.'" 42 U.S.C. § 2000e-2(a)(1); Chuang v. University of California, 225 F.3d 1115, 1125-26 (9th Cir. 2000).

11

(quoting Cornwell, 439 F.3d at 1028).

Here, with respect to the filling of the Office Technician position in September 2007, plaintiff has offered no evidence that similarly situated individuals outside her protected class were treated more favorably, nor has she come forward with evidence of any other circumstances surrounding the decision not to hire her for that position which would give rise to an inference of discrimination. In this regard, plaintiff's opposition fails to even address defendant's evidence establishing that in fact no one was considered for the Office Technician position in September 2007 because the position was being filled by a returning employee with mandatory return rights.[12]

Moreover, assuming without deciding that plaintiff has established a prima facie disparate treatment claim with respect to defendant's failure to hire her for the Office Technician position in July 2007, the undersigned finds that defendant has articulated, and produced evidence of, a legitimate nondiscriminatory reasons for failing to hire plaintiff for that position. In this regard, defendant has provided the sworn declaration of Richard Parrott, the Administrator over the Excise Tax Division in 2007, who selected Ms. Alvarez for the open Office Technician position. (Parrott Decl. (Doc. No. 57-3) at 1-2.) According to Mr. Parrott's declaration, in July of 2007 there was an Office Technician position available in the Excise Tax Division. The person hired for that position would serve as Mr. Parrott's division attendance coordinator and clerical support person. Mr. Parrott received twenty applications for the position and selected six applicants to be interviewed, including plaintiff and Ms. Alvarez. (Id. at 3.)

/////

---

[12] The fact that no one was considered for the Office Technician position in September 2007 because the position was being filled by a returning employee with mandatory return rights would also constitute a legitimate, nondiscriminatory reason for defendant's employment decision. See Pronechen v. Secretary of U.S. Dept. of Homeland Sec., No. ED-CV-1726-LEW, 2010 WL 1526316, at *2 (E.D. Cal. Apr. 15, 2010) ("Defendant successfully meets its burden shifting standard by articulating a 'legitimate, nondiscriminatory' reason for not hiring Plaintiff, the hiring freeze.").

As noted above, the evidence before the court establishes that Ms. Alvarez was an Office Assistant with the Department of Housing & Community Development where she dealt with difficult and confused callers, and worked on various projects copying, filing and organizing reports. She also organized and maintained the department's web page and directed questions and comments to the correct persons. Mr. Parrott interviewed both plaintiff and Ms. Alvarez for the position but ultimately selected Ms. Alvarez based upon her application, her interview and the recommendation of Clayton Hass, who supervised Ms. Alvarez at the Department of Housing & Community Development. Moreover, at the time of her selection, Ms. Alvarez was hired from the Office Technician promotional list, "in rank 3."[13] (Id.)

Based on the evidence produced by defendant the undersigned finds that defendant BOE has met its burden and has articulated a legitimate, nondiscriminatory reason for its employment decision. See Noyes v. Kelly Services, 488 F.3d 1163, 1169 (9th Cir. 2007); see also Fernandez v. Wynn Oil Co., 653 F.2d 1273, 1276 (9th Cir. 1981) ("An employer's decision may be justified by the hired employee's superior qualifications unless the purported justification is a pretext for invidious discrimination."); Ortega v. Regents of University of California, No. C 11-4031 PSG, 2012 WL 5988638, at *5 (N.D. Cal. Nov. 29, 2012) ("The Ninth Circuit has held that good interpersonal and communication skills may be valid, nondiscriminatory reasons for hiring or promotion."); Finley v. County of Martin, No. C-07-5922 EMC, 2009 WL 5062326, at *4 (N.D. Cal. Dec. 23, 2009) (finding declarations from members of selection panel stating that they believed employee hired was better candidate than plaintiff based on nonracial considerations constituted articulated nondiscriminatory reason backed up with evidentiary support); Gardias v. California State University, No. C07-06242 HRL, 2009 WL 3009745, at *9 (N.D. Cal. Sept. 17, 2009) (finding defendant articulated a legitimate, nondiscriminatory reason

---

[13] Indeed, in her second amended complaint plaintiff alleges that "[t]o get picked up by a state agency you have to be in the top three testing ranks on the hiring list" and that plaintiff "was in the top three ranking" for the BOE Office Technician list. (Sec. Am. Compl. (Doc. No. 28) at 22.)

for its decision based on Director's conclusion that employee hired had requisite technical and operational expertise, and good interpersonal and communication skills); cf. Grant v. Tosco Refining Co., Inc., No. C95-3224 FMS, 1996 WL 590587, at *5 (N.D. Cal. Oct. 8, 1996) ("Defendant asserts that its reason for not hiring plaintiff on both occasions was that plaintiff failed to meet Tosco's requirements of interpersonal or professional skills for both the October 1992 and February 1993 job openings. The Court finds that this is a legitimate, nondiscriminatory reason within the meaning of the Supreme Court's burden-shifting analysis.").

Because defendant has articulated a legitimate, nondiscriminatory reason for the challenged action, plaintiff must "raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." Hawn, 615 F.3d at 1155-56. See also Noyes, 488 F.3d at 1168 ("Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination."). "'[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.'" Noyes, 488 F.3d at 1170 (quoting Chuang, 225 F.3d at 1127).

Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994)) (alteration in original). Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. See, e.g., Godwin, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female"); Cordova v. State Farm Ins., 124 F.3d 1145, 1149 (9th Cir. 1997) (alleged derogatory comments constitute direct evidence).

"Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." Earl v. Nielsen

14

Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (quoting Godwin, 150 F.3d at 1222).[14]  "[T]hat requirement is tempered by our observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'" Noyes, 488 F.3d at 1170 (quoting Payne v. Norwest Corp., 113 F.3d 1079, 1080 (9th Cir. 1997)).  Nonetheless, a "plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent." Crawford v. MCI Worldcom Communications, Inc., 167 F. Supp.2d 1128, 1135 (S.D. Cal. 2001).  Moreover, "[m]erely denying the credibility of the employer's proffered reasons is insufficient to withstand summary judgment." Munoz v. Mabus, 630 F.3d 856, 865 (9th Cir. 2010).

The undersigned has reviewed all of plaintiff's filings and finds that she has failed to offer either direct or circumstantial evidence that defendant's proffered reasons for the challenged employment actions taken here are a mere pretext for unlawful discrimination.  Plaintiff has therefore failed to raise a triable issue of material fact necessitating a trial as to this claim.

Plaintiff argues in her opposition that she had to submit three references "in order to secure a state job" while Ms. Alvarez was hired because she had one good reference. (Pl.'s Opp'n (Doc. No. 58) at 7.)  Mr. Parrott's declaration, however, does not specifically address how many references Ms. Alvarez submitted, but does state that Ms. Alvarez was hired, in part, because of a good reference, specifically the detailed recommendation given by Clayton Hass, who supervised Ms. Alvarez at the Department of Housing & Community Development, to Mr. Parrott during their conversation. (Parrott Decl. (Doc. No. 57-3) at 3.)

---

[14] But see Davis v. Team Electric Co., 520 F.3d 1080, 1091 & n.6 (9th Cir. 2008) (noting that whether a plaintiff must offer "specific" and substantial" circumstantial evidence of pretext, or some lesser evidence, to defeat summary judgment is a question not clearly resolved in the Ninth Circuit); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029-31 (9th Cir. 2006) (questioning the continued viability of the holding in Godwin after the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003)).

15

Plaintiff also argues that Ms. Alvarez had her sister, Serene Takahashi, who previously worked for Mr. Parrott, submit her application to Mr. Parrot personally so that Mr. Parrot would be aware that Ms. Alvarez was Serene Takashi's sister and was Asian, and would therefore show preferential treatment towards Ms. Alvarez. (Pl.'s Opp.'n (Doc. No. 58) at 7.) Plaintiff also disputes in conclusory fashion the contention that Ms. Alvarez was last employed by the Department of Community and Housing and claims that Ms. Alvarez was instead working at a bar. (Id.)

These assertions, however, are merely unsupported speculation and general allegations of discriminatory intent which fail to establish pretext on the part of defendant BOE either directly or indirectly. Accordingly, defendant's motion for summary judgment as to plaintiff's discrimination claim should be granted.

2) Retaliation

Title VII also prohibits retaliation by an employer "against an employee for making a charge or otherwise participating in a Title VII proceeding." Nilsson v. City of Mesa, 503 F.3d 947, 953 (9th Cir. 2007). Under § 704 of the Civil Rights Act of 1964, it is unlawful

> for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3 (2000). "To establish a claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007). See also Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).

As to the first element of the prima facie case, an employee's formal or informal complaint regarding unlawful employment practices is "protected activity," and a plaintiff need

only show that her belief that an unlawful employment practice occurred was "reasonable." See Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000); Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir. 1994). As to the second element, for purposes of a retaliation claim a challenged action must be "materially adverse," which means that it would dissuade a reasonable worker from exercising protected rights. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). As to the third element, a plaintiff may establish a causal link between the protected activity engaged in and the adverse action taken by circumstantial evidence, including the employer's knowledge of the protected activity and a proximity in time between the protected action and the adverse employment act. Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988). See also Passantino, 212 F.3d at 507 ("[W]hen adverse decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").

"If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate 'a legitimate, nondiscriminatory reason for the adverse employment action.'" Sanders v. City of Newport, 657 F.3d 772, 777 n.3 (9th Cir. 2011) (quoting Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 849 (9th Cir. 2004). If the employer articulates a legitimate reason for its action, the plaintiff must then show that the reason given is pretextual. See Pottenger v. Potlatch Corp., 329 F.3d 740, 746 (9th Cir. 2003).

Here, with respect to the filling of the Office Technician position in September 2007, there is no evidence that the failure to hire plaintiff for that position was a "materially adverse" action that would dissuade a reasonable worker from exercising protected rights. In this regard, defendant's evidence establishes that plaintiff was not singled out because she had previously filed a complaint alleging discrimination, but was instead treated the same as every other BOE employee in being denied consideration for the position because it was being filled by a returning employee with mandatory return rights. Moreover, for the reasons stated above, with respect to the filling of both the Office Technician positions in July 2007 and September 2007,

defendant has articulated, and offered evidence of, legitimate, nondiscriminatory reasons for the challenged actions and plaintiff has failed to come forward with any evidence demonstrating or even suggesting that those reasons are pretextual.  Accordingly, defendant's motion for summary judgment as to plaintiff's retaliation claim should also be granted.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's August 6, 2012 motion for summary judgment (Doc. No. 57) be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.pro se\jackson1387.msj.f&rs